EDMOND GEORGE V. STATE OF NEBRASKA.

FILED FEBRUARY 9, 1899.   No. 10356.

Receiving Stolen Cattle: CONVICTION: EVIDENCE. The evidence in this case stated, and *held* insufficient to sustain the verdict of the jury.

ERROR to the district court for Cherry county. Tried below before KINKAID, J. *Reversed.*

*J. Wesley Tucker,* for plaintiff in error.

References: Maxwell, Criminal Procedure 383; *Walbridge v. State,* 13 Neb. 236; *Sumner v. State,* 5 Blackf. [Ind.] 579; *Commonwealth v. Webster,* 5 Cush. [Mass.] 296; 1 Greenleaf, Evidence secs. 33, 34.

*C. J. Smyth, Attorney General,* and *Ed P. Smith. Deputy Attorney General, contra.*

RYAN, C.

In the district court of Cherry county Edmond George, in the first count of an information, was charged with unlawfully and feloniously taking, stealing, and driving away four cattle of the aggregate value of $100. In the second count of said information it was charged that on

or about October 7, 1897, the said George, in said county, did unlawfully and feloniously receive the same cattle, of the same value as were described in the first count, as then and there lately stolen and driven away, with the intent on the part of said George to defraud the owners of said cattle, the said George then and there well knowing that all of said cattle had been stolen. There was a conviction on the second count, whereupon there was judgment that George be imprisoned in the penitentiary for the term of five years and pay the costs of the prosecution. To reverse this judgment he has prosecuted error proceedings in this court. One of the assignments in his petition in error is that the evidence does not sustain the verdict, and in the view we take it will be unnecessary to consider any other assignment.

One of the owners of the cattle alleged to have been stolen testified that he missed said cattle October 6 or 7, 1897; that he saw the accused at the ranch of witness in the latter part of September, 1897; that the accused was then riding a gray horse and another horse of the same color was following; that accused watered the horses at the water-trough of the witness; that the horse which was following the horse the accused was riding stopped at the hay of witness, whereupon the accused asked a son of witness to drive said horse away. This witness, a day or so previous to the date above referred to, had seen a person whom he believed to be the accused riding one gray horse and leading another along or near Fairfield creek, which is near the ranch of witness. This is the substance of the evidence relied upon to show that the accused had felonious intentions with reference to the cattle before they were stolen.

It was testified that one of the cattle, before the theft, was branded with a circle U on the right side, another was branded with a circle U on the left side, another had the letters F J on the right hip, and, it seems, the other was branded with the figures 13. About six weeks after the cattle were missed at the ranch they were found by

their owners at the ranch of Mr. Carr, a mile west of Springview, in Keya Paha county. The brands had, meantime, been changed. It was shown by the evidence, without contradiction, that the cattle had been brought to the farm of Mr. Carr by Mr. Lamoreux, who had purchased them October 9, 1897, from the accused. Mr. Lamoreux, at the time of this purchase, was living on the Sioux Reservation, in South Dakota, and the purchase of the cattle by him was at his home. The brands at that time, he testified, had been altered. The same afternoon of his purchase Lamoreux placed these cattle among other cattle, and with the whole bunch thus made up started to go to Springview, in Keya Paha county. The cattle he had bought of George he did not ship at Springview, as he did the remainder of the lot, but left them with Mr. Carr, where they were afterward found by the owners and reclaimed. From this evidence it seems clear that some one stole these cattle and altered their distinctive brands. The conviction of George, however, was not of larceny but of purchasing stolen cattle, knowing them to have been stolen. From this conviction we are bound to assume that a person other than George had been guilty of larceny, and that George's connection with the transaction began after the theft had taken place. Let us now consider what evidence there was to show how, when, and where George purchased as the jury found he did.

The accused was sworn on his own behalf and testified that previous to October 4, 1897, he had been told by Chris Colombe, who resided on the Sioux Reservation, that the said Colombe was desirous of hiring a hand; that on October 4, aforesaid, accompanied by Eugene Myers, who proposed to hire to Colombe, the accused started to go from near Sparks, in Cherry county, to the ranch of Colombe; that when they had passed beyond the state line about sixteen miles the accused and Myers fell in with Chris and David Colombe at the intersection of two highways; that while these four persons were talking,

George v. State.

a man by the name of Joe Cross came up one of the roads driving five head of cattle; that Cross offered to sell the cattle; that after some negotiations the accused purchased them for $85, which he then and there paid Cross; that at that time the accused did not notice that the brands had been worked over; that Cross, upon receiving payment, made a bill of sale of the cattle to the accused; that the accused had never seen Cross since that time; that after purchasing the cattle the accused and Myers took the cattle to Chris and David Colombe's ranch and kept them there five days, at the end of which time the accused sold them to Lamoreux. Ed Colombe was sworn and testified that Joe Cross was well known to witness and had worked for witness' father about ten years off and on; that witness was acquainted with the handwriting of Cross, and that the bill of sale made to the accused had, in the opinion of witness, been executed by said Cross. There were two witnesses who testified that they were well acquainted with the region about the Rosebud Agency, where it was claimed Cross had been living, and that they never heard of such a man. Eugene Myers testified that he went with the accused from Cherry county to the ranch of the Colombes on October 4, 1897, but that neither the accused nor himself saw or drove any cattle at that time, and that the accused did not buy any cattle of Cross, or any one else, on that trip.

In brief, the above was all the evidence offered by either side, and while the contradictions of the testimony of George might lead to the conclusion that he was very unreliable as a witness, it does not follow from these contradictions that the jury were justified in finding that he purchased the cattle in Cherry county, Nebraska, as charged in the count of the information on which he was convicted. On this, the essential proposition, there was no evidence to justify the verdict, and the judgment thereon rendered is reversed.

REVERSED AND REMANDED.