## THE STATE v. RICHMOND, Appellant.

Division Two, January 31, 1905.*

1. CRIMINAL LAW: Information: Joinder of Counts for Burglary and Larceny, and for Receiving Stolen Goods. Counts for burglary and larceny and for receiving stolen goods may be properly joined.

2. ———: ———: ———: No Motion to Elect. A defendant can not on appeal complain of a misjoinder of counts, when he has made no motion to elect, and when the court of its own motion has compelled the prosecuting attorney to elect.

3. ———: Receiving Stolen Goods: Possession: Presumption: Instruction. The mere possession of stolen goods, without proof

*Opinion filed December 13, 1904; motion for rehearing filed; motion overruled January 31, 1905.

that defendant received them knowing them to have been stolen, raises no presumption that defendant knew the goods had been stolen. And an instruction so declaring the law is proper.

4. ———: ———: **Establishing Guilty Knowledge: Evidence.** In a prosecution for receiving stolen goods knowing them to have been stolen, it is sufficient if the evidence shows that defendant received the goods under such circumstances as would lead a man of ordinary caution and intelligence to believe that they had been stolen. Knowledge may be deduced from conduct and behavior, the character of the person from whom received, the kind of goods and the hour when received. And the purchase of new clothing, of the value of more than thirty dollars, of irresponsible persons; the receiving of the goods at dusk, by the back door on an alley; the fact that the owner's name is on the goods; the neglect to even look at the goods, or to use any of the ordinary precautions governing a sale between private persons by examining the quality of the goods or fixing a price having some relation to their value—are sufficient circumstances from which to draw an inference of guilty knowledge.

5. ———: ———: **Intent.** It is not necessary, in a prosecution for receiving stolen goods knowing them to have been stolen, to charge that defendant received the goods with intent to deprive the owner thereof, or to aid the thief.

Appeal from Hannibal Court of Common Pleas.— *Hon. D. H. Eby,* Judge.

AFFIRMED.

*Thomas F. Gatts* for appellant.

(1) The court should have sustained defendant's motion in arrest of judgment, because it is bad criminal pleading to blend in one information different distinct offenses calling for different legal judgments and not growing out of the same transaction, as a defendant could not be consistently tried and convicted for burglary and grand larceny and for receiving the same goods knowing them to have been stolen, under one and the same information. State v. Green, 24 Mo. App. 227; State v. Healy, 50 Mo. App. 243; State v. Nitch, 79 Mo. App. 99; State v. Herix, 109 Mo. 654; State v. Wagner, 118 Mo. 626. (2) The second count in the

information was bad because it failed to charge that defendant received the goods knowing the same to have been stolen and took the same into his possession for the purpose of aiding the thief or with the fraudulent intent of depriving the owner thereof. State v. Sweeten, 75 Mo. App. 127; 2 Bishop's New Criminal Law, sec. 1137; State v. Witt, 9 Mo. 671; State v. Waller, 174 Mo. 518; 20 Am. & Eng. Ency. Law, 447. (3) The court erred in its instructions to further instruct the jury that before the defendant could be convicted ''they must believe that defendant received and took the goods into his possession with the intent and purpose of aiding the thief or with the fraudulent intent of depriving the owner thereof.'' State v. Sweeten, 75 Mo. App. 127; 2 Bishop's New Crim. Law, sec. 1137; State v. Waller, 174 Mo. 518; 1 Bish. Crim. Law, sec. 567; State v. Williams, 95 Mo. 247; People v. Johnson, 1 Parker C. C. 564. (4) Defendant's demurrer to the evidence should have been sustained, because under all the evidence the State failed to show that, at the time the defendant received the goods, he had any knowledge, either direct or circumstantial, that the goods were stolen; this was necessary under any construction of the law or the statute, relating to this offense. State v. Greenspan, 70 Mo. App. 468; State v. Sweeten, 75 Mo. App. 127; State v. Tissing, 74 Mo. 72.

*Edward C. Crow*, Attorney-General, and *C. D. Corum* for the State.

(1) It is well-settled law in this State that when property is stolen and recently thereafter the same property is found in the possession of a person, such person is presumed to be the thief, and if he fails to account for such possession in a manner consistent with innocence, the presumption becomes conclusive against him. State v. Jennings, 81 Mo. 188; State v. Kelly, 73 Mo. 608; State v. Babb, 36 Mo. 501. The evidence,

therefore, is sufficient to convict the defendant of having stolen the goods. State v. Guild, 149 Mo. 370. (2) It is for the jury to say, under all circumstances, whether they are satisfied as to the identity of the goods, beyond a reasonable doubt. Convictions have been sustained where the evidence of the identity of goods is less positive than here. State v. Babb, 76 Mo. 501; Misseldine v. State, 21 Tex. App. 335; Underhill on Crim. Ev., 356. (3) It was entirely competent to join in the information a count for receiving stolen goods, with a count for burglary and larceny. The second count charged an offense in the nature of a corollary to the original felony, and such a joinder is good. State v. Daubert, 42 Mo. 242; 2 Bishop's New Crim. Procedure, sec. 981. (4) Besides, had the joinder been ill, defendant is not in a position to raise the question now. The matter should have been presented to the court before going to trial. Even in all cases where improper offenses are joined, judgments will not be arrested for that defect. 1 Bishop's New Crim. Procedure, secs. 424 and 447; 94 Am. Dec. 130.

GANTT, P. J.—The prosecution in this case was commenced by information filed by the prosecuting attorney of Marion county, duly verified by him. The information contained two counts, the first for burglary and larceny, and the second for receiving stolen goods knowing the same to have been stolen. No motion to quash on the ground that the two counts were incongruous or inconsistent was filed, and no request was made to require the State to elect on which count it would seek a conviction. The evidence was heard and at the close the court required the State to elect, and the prosecuting attorney chose to stand on the second count, and the court instructed the jury that the defendant was not on trial on the charge of burglary and larceny. The defendant was convicted of receiving stolen goods of the value of thirty dollars or more and

his punishment assessed at imprisonment in the peni-
tentiary for two years.  He appeals.

The evidence, in substance, was as follows:

"John O. Lingle testified that he was a clerk in
the employ of Brashears Brothers, clothing merchants,
at Hannibal, Missouri, on the 3rd of November, 1903;
that when he opened the front doors of the store on the
morning of the 3rd of November, he discovered that
the clothing on the tables was . disarranged, and a
number of pieces lying on the floor.  He stated that the
entire upper portion of the back door was glass, and
that soon after entering the store he observed that the
light was broken out of one of the back doors.    He
testified that there was a belted overcoat and a pair
of pants and a vest missing.  It seems that these goods
had been laid aside at the request of a customer, and
were, therefore, easily missed.  The value of the coat
was twenty-five dollars, the value of the pants about
five dollars, and the vest about three dollars and fifty
cents; that the overcoat was manufactured by Stein-
Bloch & Company, and had their trade mark.  This is
all of his testimony that was material.

"George Brashears testified that he is a member
of the firm of Brashears Brothers; that the firm was
engaged in selling men's, youths' and boys' clothing
and furnishing goods; that he found the stock scattered
promiscuously over the floor on  being summoned  by
his clerk early on the morning of the third of Novem-
ber; that he discovered that the clothes referred to by
Lingle in his testimony were gone, and that the pane
of glass was broken out in the back door, leaving a
space large enough for a man to enter; that the goods
were brought back to the store by his partner; that
they only missed one pair of pants, but recovered two
or three pairs; that the total value of the goods stolen
was seventy-five dollars; that the trousers  had  the
name of Stein-Bloch & Company on the buttons; that

the coat had the same name on the flap, on the inside
of the collar, and that it also had the label 'Brashears
Brothers' on the collar; that the label 'Brashears
Brothers' had been removed; that the hat was pur-
chased by him from Young Brothers; that on the
sweat-band, on the inside of the hat, was the mark,
'Young Brothers, Broadway, New York,' and on the
other side this mark: 'Brashears Brothers, Hannibal,.
Missouri;' that the 'Brashears Brothers, Hannibal,
Missouri,' label had been removed. He testified that
the pants and the vest matched with the other wearing
apparel, constituting the suit of which they were a
part. On re-direct examination he testified that the
hat and the label, 'Brashears Brothers' on the inside
of the sweatband, was loose from the hat and that the
hat was rumpled up considerably when he recovered it.

"Sam Aubrey testified that during the middle of
November, 1903, he was working for the defendant;
that about that time the defendant instructed him, one
night, to go down to the store and admit a boy by the
name of Spooner; that he admitted the Spooner boy
at the rear of the building owned by defendant; that
the Spooner boy came through the alley; that the
Spooner boy brought the clothing introduced in evi-
dence; that the Spooner boy left, and witness locked
the door and went on up the street, and he observed the
Spooner boy and defendant talking; that the defend-
ant asked witness if he thought the clothes were worth
six dollars and was advised that he thought so. He
was under the impression that the defendant gave
Spooner some money; that he did not see it, and was
not positive that it was paid; but from the motions
made by the defendant and Spooner, the witness was
under the impression that the consideration passed;
that he did not advise the defendant as to the number
of articles of clothing brought by Spooner, nor did the
defendant inquire as to the number. Witness testified
that he was present two or three days later, when the

defendant purchased a coat and two pairs of pants from a party by the name of Jones, and paid therefor three dollars. Witness identified the coat introduced in evidence as the one brought to defendant's door by Spooner.

"Joseph Brashears testified that he is a member of the firm of Brashears Bros. He described the condition of the store practically the same as his brother and clerk had previously done; that he was positive that the overcoat and pants and vest were missing, and was positive as to these on account of their having been laid aside; that he afterwards saw this clothing in the second-hand store of the defendant, at Hannibal; that the same was in a wardrobe belonging to the defendant, the door of which was opened by the defendant in the presence of the officers; that the overcoat, hat and a pair of pants were at the house of the defendant, and were brought to him by the defendant; that the defendant stated that he had worn the coat and hat; had worn it in the town of Hannibal and intended to block the hat over, and keep it for his own use. He proved the venue.

"The defendant testified that he bought the goods from the Spooner boy and from a man who had a scar on his face, presumably Jones; defendant was asked what he paid for the goods and he evaded the question; defendant stated that he purchased the goods along about the first of November.

"George Munson testified that he was constable about the first of December, 1903; that he procured a search warrant about that time to justify him in searching the second-hand store of Richmond; that he advised Richmond what was wanted and instructed him to unlock the building, which the defendant did. He found the goods of the prosecuting witness in a wardrobe in Richmond's store. The goods were identified by Mr. Brashears.

"The defendant said he bought the goods from a

man by the name of Spooner, and from some fellow with a scar on his face."

The court thereupon instructed the jury as follows:

"The court instructs the jury that the information in this cause and read to the jury is a mere formal charge or accusation against the defendant and is not any evidence of his guilt.

"The defendant is presumed to be innocent of any offense until his guilt is established from the evidence in the cause beyond a reasonable doubt; if, therefore, the jury have a reasonable doubt of the defendant's guilt, they should acquit him, but a doubt, to authorize an acquittal on that ground, ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of his innocence.

"The jury are the sole judges of the weight of the evidence and the credibility of the witnesses who testified in the cause.

"Unless the jury believe from all the evidence in the cause, beyond a reasonable doubt, that the defendant bought or received the property or some portion thereof mentioned in the information, from some other person, knowing said property to have been stolen, they will find him not guilty; and the mere naked fact of the possession of said property by defendant, if such is the fact, raises no presumption that defendant knew that said property had been stolen.

"The court instructs the jury that if they find from the evidence in the cause, beyond a reasonable doubt, that at the township of Mason, in Marion county, Missouri, at any time within three years next before the 18th day of January, 1904, the personal property, or any portion thereof, mentioned in the information, was there, by some one other than the defendant, stolen, taken and carried away from the possession of George W. Brashears and Joseph B. Brashears, then and there copartners under the firm name of Brashears.

Brothers, if so the jury find, with the intent on the part of the thief to permanently deprive said Brashears Brothers of the same, and to convert said property, if any, so stolen, to the use of said thief and make it his property, and without the consent of the true owner thereof, and without any honest claim of any right so to do or some right, title or interest in or to said property, if any, so stolen on the part of said thief, if any, and that said property, if any, so stolen, was then and there the personal property of said Brashears Brothers and was of the value of thirty dollars or more; and that after said property had been, by some one other than the defendant, thus stolen, taken and carried away, if so the jury find, the defendant, at said township, county and State, did take and receive it into his possession, and that at the time he did so he knew it to be stolen property, then if the jury find that said property, if any, so received by defendant with such knowledge, if such is the fact, was, at the time it was so received by him, of the value of thirty dollars, the jury should find the defendant guilty and assess his punishment at imprisonment in the penitentiary for a term not less than two years nor more than five years; and if the jury find that said property, if any, so stolen, taken and carried away, was under the value of thirty dollars, and that thereafter said property of a value less than thirty was taken and received by defendant into his possession with knowledge on his part, at the time of receiving the same, that it was stolen property; and if the jury further find that said property, if any, so stolen, taken and carried away by some one other than the defendant and thereafter received by defendant, was the personal property of said Brashears Brothers and that it was stolen within one year next before the 18th of January, 1904, then the jury should find the defendant guilty and assess his punishment at imprisonment in the county jail not ex-

ceeding one year, or by fine not exceeding one hundred dollars, or by both such fine and imprisonment.

"The court further instructs the jury that the defendant is on trial on the charge of receiving stolen property knowing the same to have been stolen, the charge of burglary and larceny having been dismissed, and the defendant is not on trial for the same."

And to the action of the court in giving the foregoing instructions adverse to defendant, defendant then and there, at the time, excepted and still excepts.

I.  A reversal is sought on the ground of misjoinder of the counts for burglary and larceny with one for receiving stolen goods knowing them to be stolen.

In State v. Daubert, 42 Mo. 242, Judge WAGNER, speaking for the court, announced the rule in this State to be that a motion to compel an election is addressed to the sound discretion of the court trying the case and this court will not interfere with that discretion unless it is apparent that it has been exercised oppressively or to the manifest injury of the accused. [State v. Jackson, 17 Mo. 544; State v. Leonard, 22 Mo. 450.]

In State v. Gray, 37 Mo. 464, there were two counts in the indictment, one for larceny, the other for receiving stolen goods knowing them to be stolen.  A motion to compel the State to elect was duly and timely lodged but was overruled and the action of the circuit court was assigned as error in this court, but it was held not error.  This court in that case remarked that no evidence was given as far as one of the counts was concerned and the ruling of the court in no manner operated to the injury of the prisoner.  In this case the evidence was directed to proving the defendant received the stolen goods knowing them to be stolen, and practically no effort was made to convict defendant of the burglary and larceny.  In State v. Gray, 37 Mo. 464, the decision of the New York court

in People v. Baker, 3 Hill 159, was approved, in which counts for larceny, burglary and receiving stolen goods were joined in one indictment, and it was held not error to refuse to compel the prosecutor to elect. In State v. Daubert, supra, this court expressly held that a count for larceny and one for receiving stolen goods could properly be joined, and the same ruling was made in State v. Speight, 69 N. C. 72. By section 1916, Revised Statutes 1899, the receiving of stolen goods knowing them to be stolen is punishable just as the larceny of the same would be. We think the approved doctrine is that the two counts may be properly joined. [1 Bish. New Crim. Proc., sec. 449, subsec. 7, and cases cited.]

But in any event the defendant cannot complain of such joinder in this case for the reason that he made no motion to elect at any time, and the circuit court of its own motion compelled the prosecuting attorney to elect and submitted one offense only to the jury, to-wit, receiving stolen goods knowing they had been stolen.

II. The circuit court instructed the jury that "the mere naked fact of the possession of said property by defendant, if such was a fact, raised no presumption that defendant knew that said property had been stolen." Certainly the defendant could not complain of this announcement of the law, since this court, in State v. Guild, 149 Mo. 370, held that the same presumption arose from recent possession of stolen goods, in a prosecution for receiving goods knowing them to be stolen, as in larceny.

We think the circuit court correctly instructed the jury. Proof of the possession of stolen property is of course competent and essential to substantiate the charge, but the naked possession, without proof that the defendant received the goods *knowing they had been stolen,* will not sustain the charge. The very

essence of the offense is the receiving, *knowing them to have been stolen.* If the presumption is to be indulged that every person found in possession of stolen goods knows them to be stolen, the State would be relieved of establishing the guilty knowledge and the burden would be thrown on the defendant of establishing his innocence.

The information in this case and indictments under this section proceed on the assumption that the defendant did not steal the goods himself, but had guilty knowledge that they were stolen. A presumption, to constitute the basis of a conviction, ought to be the the natural and ordinary inference which the common sense and experience of mankind draws from the connection, relation and coincidence of facts with each other.

The question is not whether the possession and accompanying proofs tending to show guilty knowledge may be sufficient to establish the guilty knowledge, but whether from possession alone there is a presumption that the party in possession *knew* that the party from whom he received the goods had stolen them. In State v. Bulla, 89 Mo. 595, this court unanimously rejected such a presumption. In State v. Guild, 149 Mo. 370, that case was disapproved, but a re-examination of the record in that case makes it apparent that the circuit court in that case did not instruct that recent possession alone of the stolen goods by the defendant raised a presumption of his having received them *knowing they had been stolen.* We have no doubt whatever of the correctness of the judgment in that case, but upon reconsideration we are satisfied we went too far when we disapproved the decision in State v. Bulla, 89 Mo. 595. The last-named case is in harmony with Durant v. People, 13 Mich. 351, in which the Supreme Court of Michigan says: ''The defendant was not charged with larceny of the goods, and her possession could not be used as evidence tending to

show that she had stolen them.  Her possession must be regarded as innocent, unless shown to have been received with knowledge that they were stolen, or under circumstances which would satisfy the jury that she believed them to be stolen.  Possession itself, *without evidence* tending to show such guilty knowledge, could have no tendency to establish her guilt." And again: "We think, in all prosecutions for this offense, it must, upon principle, be competent alike both for the prosecution and the defense to show what were the actual circumstances, the arrangement or understanding under which the goods were received by the defendant, whether the effect shall be to establish guilt or innocence."

Bishop in his New Crim. Proc., vol. 2, sec. 989, after stating that possession may be evidence, says, "But *the proper accompanying proofs* must appear, or it will amount to nothing."

III.  This brings us to the main contention in this case, to-wit, that the evidence is insufficient to sustain the verdict.  The rule in this court has always been that this court will not weigh the evidence of witnesses, where there is sufficient evidence, if believed by the jury, to justify their verdict.

It is only when, giving full credence to all the inculpatory testimony, as a matter of law it falls short of that which the law requires.  In view of this well-settled practice, was there sufficient evidence to justify a conviction?  The testimony leaves absolutely no doubt that on or about the 3rd day of November, 1903, the store of Brashears Brothers, in Hannibal, Missouri, was burglarized, and a lot of ready-made clothing stolen therefrom, particularly an overcoat, a hat, a pair of pants and a vest, altogether of the value of more than $30.  These goods had been laid aside for a customer for certain alterations to be made, and for that reason were more readily missed and identified.

Some three weeks later these goods were found under a search warrant in the exclusive possession of the defendant who kept a second-hand store in Hannibal called the "Dixie Store." The evidence discovers moreover that almost immediately after the burglary and theft these goods were sold to defendant by a certain scar-faced man whose name he did not know, but who was identified by another witness, Aubrey, as the "Jones boy," and a young man named Spooner. Aubrey related the history of the transaction after this manner: He worked for defendant. About dusk one evening, just after Brashears' store had been burglarized, the Spooner boy, who was not a merchant dealing in clothing, but without apparent means of livelihood, aproached Aubrey and wanted to know where the defendant was, calling him by the familiar name of "Lola." Defendant was not at the store and had locked it for the night. Aubrey went in search of defendant and found him and was told by defendant to take the key and let the Spooner boy in. Aubrey then returned to the Spooner boy and advised him to come to the store and thereupon Spooner disappeared and returned, not to the front entrance, but the back door in the alley, with these new goods which were branded with the trade mark and name of Brashears and then they were placed in the store. Aubrey was not authorized to make a bargain for them. His instructions were simply to let Spooner in. When the goods were deposited Aubrey locked the door and he and Spooner again returned to defendant. Thereupon defendant, without inquiring of Aubrey what kind of goods they were, whether new or old, or whether coats, overcoats or pants, or how many of each there were, simply asked Aubrey if they were worth $6 and when told they were, paid Spooner $6 for them. Aubrey was not a regular clerk. The goods from that time on were in the exclusive possession of defendant. He had not purchased the goods in the usual course of trade, but

under most suspicious circumstances. They were new, of that season's manufacture, and bore Brashears' name on them. They were not second-hand goods in any sense. We have already said it is too strong to instruct a jury to presume a guilty knowledge that these goods were stolen before he received them, but the recent possession of these new goods after they had been stolen is evidence, and when to that is added the fact that they were new, that Spooner was selling him $30 worth of new clothing with Brashears' name on them, was it not his duty to inquire further how Spooner became possessed of these goods?

Dr. Wharton, in his work on Criminal Evidence (9 Ed.), section 760, says: ''Has the article in the defendant's possession such earmarks as made it his duty, on its coming to his hands, to seek out its owner? For, supposing even that he *found* it, yet, if it has such earmarks, he is guilty of larceny if he do not return it to the party whose property he is thus notified it is. Hence the question of 'recent' is much affected by that of marks of this class. Thus a book without any name upon it, or any mark to identify it as belonging to any particular private owner, may innocently be picked up at a book-stall within a few hours after it was stolen. Yet, notwithstanding the 'recentness' of the stealing, no jury would or should convict a person in whose possession the book is found, although he should be unable to remember the book-stall at which he bought it, or in any way corroborate his story. For the purchase of second-hand books at book-stalls is of such every-day occurrence, and in a large city book-stalls are so numerous, and so easily confused in the memory, that it would be both irrational and unsafe to convict of larceny simply because the defendant had in his possession, shortly after it was stolen, a book which had nothing on its face to show that it had been taken feloniously from any particular owner. *It would be otherwise, however, with*

*a book of marked appearance,* and peculiar value, *containing an owner's name."*

While guilty knowledge of the larceny is the essential fact to be established in a prosecution like this, this knowledge need not be that actual and positive knowledge which is acquired from personal observation of the fact. Thus in Collins v. State, 33 Ala. 434, an instruction was approved which advised the jury that they would be authorized to find guilty knowledge if the defendant received the goods under such circumstances as would satisfy a man of ordinary intelligence and caution that they were stolen.

Baron Bramwell, in Regina v. White, 2 F. & F. 665, instructed the jury that "the knowledge charged in this indictment need not be such knowledge as would be acquired if the prisoner had actually seen the lead stolen; it is sufficient if you think the circumstances were such accompanying this transaction as to make the prisoner believe that it had been stolen." In People v. Clausen, 120 Cal. 381, the Supreme Court of California commented on the evidence that the defendant paid but $2.50 for the property which was shown to be worth fifty or sixty dollars, and adopted Wharton's statement of the law on this question, as follows: "Whether the defendant knew that the goods were stolen is to be determined by all the facts of the case. It is not necessary that he should have heard the facts from eyewitnesses. He is required to use the circumspection usual with persons taking goods by private purchase; and this is evidently the case with dealers buying at greatly depreciated rates. That which a man in the defendant's position ought to have suspected he must be regarded as having suspected, as far as was necessary to put him on guard and on his inquiries. The proof in any case is to be inferential, and among the inferences prominent are inadequacy of price, irresponsibility of vendor or depositor." [Wharton's Crim. Law, sec. 984; People v.

Hertz, 105 Cal. 663.] To the same effect see Cobb v. State, 76 Ga. 664, in which the court says: · "Knowledge may well be deduced from conduct and behavior, *the character of the person from whom received,* and the *kind of goods,* and the *hour* when received." [Huggins v. People, 135 Ill. 243; Frank v. State, 67 Miss. 125; Hester v. State, 103 Ala. 83; People v. Schooley, 149 N. Y. 99; Com. v. Finn, 108 Mass. 466.]

In view of this array of authority as to the quantum of evidence sufficient to support a verdict on a charge of receiving stolen goods knowing them to be stolen, we think the jury were justified in finding the defendant guilty. The purchase of new clothing, of the value of more than thirty dollars, of irresponsible persons, such as the evidence discloses Jones and Spooner were, and at dusk; the receiving of the goods by the back door on an alley; the fact that Brashears' name was on the hat and coat; the neglect to even look at the goods or to use any of the ordinary precautions governing a sale between private persons by examining the quality of the goods or fixing a price having some relation to their value—all these circumstances concurring furnished evidence to sustain the verdict. It was a question of fact for the jury and it was their province to draw the inference of guilty knowledge from the incriminating circumstances in evidence.

IV. But it is further urged that the second count on which the defendant was convicted "fails to charge that the defendant received the goods knowing them to have been stolen and *took* them into his possession for the purpose of aiding the thief or with the fraudulent intent of depriving the owner thereof."

Section 1916, Revised Statutes 1899, contains no such requirement. By its terms receiving the stolen property knowing the same to have been stolen makes the case. In the absence of a statutory provision that the defendant received the goods with intent to deprive the owner thereof or to aid the thief, no such

averment is necessary or essential in an indictment or information for this offense. [People v. Avila, 43 Cal. 196; Gandolpho v. State, 33 Ind. 439; State v. Moultrie, 34 La. Ann. 489; State v. Hodges, 55 Md. 127; Nourse v. State, 2 Tex. App. 304.] The decisions of this court on the requisites of larceny are not applicable.

We have carefully considered all the assignments of error and find no reversible error in the record, and the judgment is accordingly affirmed.

All concur, except *Burgess, J.,* absent.