# Staunton.

## H. A. STAPLETON v. COMMONWEALTH.

### September 18, 1924.

1. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Indictment for Burglary and Larceny—Compound Larceny—Conviction of Larceny.*—An indictment for compound larceny containing only one count in which both the burglary and larceny were charged is sufficient to support a conviction of larceny.

2. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Indictment for Burglary and Larceny—Compound Larceny—Conviction of either Burglary or Larceny—Conviction of both Burglary and Larceny* —Under an indictment charging both burglary and larceny there may be a conviction of the offense of burglary or of the offense of larceny charged therein, but there cannot be a conviction of both of such offenses.

3. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Indictment for Burglary and Larceny—Compound Larceny—General Verdict.*—Where under an indictment for burglary and larceny there is a general verdict not specifying of which offense the accused is found guilty, it will be considered to be a conviction of the major offense.

4. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Indictment for Burglary and Larceny—Compound Larceny.*—Under an indictment for burglary and larceny a verdict of guilty of grand larceny negatives the burglary so far as the accused is concerned.

5. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Indictment for Burglary and Larceny—Compound Larceny.*—An indictment for compound larceny containing only one count in which both the burglary and larceny were charged is primarily an indictment for larceny. The allegations concerning the burglary are matters of aggravation only, and the test of the sufficiency of the indictment, as an indictment for larceny, is whether the indictment, when stripped of the aggravating matter, embraces still a competent charge of larceny at common law.

6. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Indictment for Burglary and Larceny—Compound Larceny—Good Indictment for Larceny— Case at Bar.*—In the instant case, an indictment charged that the accused, at the time and place mentioned, "feloniously and burglariously did break and enter, with intent to commit larceny, a certain dwelling house of John G. Paul  .  .  [situate, etc.], and  .  .

[certain jewelry, described and valued in detail, of the aggregate value of $298.00], being the property and jewelry of John G. Paul, then and there situate in said dwelling house, there and then feloniously and burglariously did steal, take, and carry away," etc.

*Held:* That the indictment contained a competent specific charge of larceny of common law.

7. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Lesser Offenses Included in the Larger—Lesser Offense Constituent Part of Major Offense.*—An indictment in terms charging only one·major offense is held to also embrace the charge of all lesser offenses which are incident to and constitute elements of the major offense. In such cases, only such lesser offenses as are in their nature constituent parts of the major offense can be considered as charged in the indictment, and conviction of such character of lesser offenses only can be had and enforced under such an indictment. But where the indictment in terms charges both a major and lesser offense, a conviction of the lesser offense may be had if the indictment contains a competent specific charge of such offense, and this not because the lesser offense is of such character that it is an element of the major offense charged.

8. LARCENY—*Indictment for Larceny—Conviction for Receiving Stolen Goods.*—Under an indictment for larceny charging the actual asportation of the goods *animo furandi,* accused may be found guilty of receiving stolen goods, knowing them to have been stolen, which is deemed larceny merely by reason of the statute. Code of 1919, section 4448.

9. LARCENY—*Principal and Accessory—Evidence Sufficient to Support Verdict of Larceny.*—Where accused was the instigator and moving spirit in bringing about the larceny, procured his associates to commit the crime, and with intent to steal the property before the event instigated and directed the acts done by his associates in the commission of the crime, and also assisted them in taking and carrying away the goods, he is guilty of actual larceny and subject to punishment as a principal in the first degree.

10. LARCENY—*Receiving Stolen Goods—Indictment for Larceny—Conviction of Receiving Stolen Goods.*—Under section 4448 of the Code of 1919, on the charge of actual larceny, it is permissible to prove and obtain a conviction of the constructive larceny, consisting of the receiving of the stolen goods, knowing them to have been stolen.

11. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Date of Offense—Felonies.*—In felony cases the Commonwealth may prove the commission of the crime charged on a date different from that alleged in the indictment, and sustain a conviction thereof.

12. LARCENY—*Receiving Stolen Goods—Instructions—Recent Exclusive Pos-*

*session of the Stolen Property.*—On the prosecution of an indictment for larceny it was not error to instruct the jury in effect that they might consider the fact of recent exclusive possession of the stolen property, under the circumstances set forth in the instruction, as evidence of constructive larceny, as well as of the actual larceny.   Not only is the evidence of possession relevant in cases of larceny, but also in cases for receiving stolen goods.

13.   LARCENY—*Receiving Stolen Goods—Recent Possession.*—The mere naked possession of stolen goods, unaided by other proof, is no evidence of the accused having received the goods knowing them to have been stolen.   But recent exclusive unexplained possession of stolen goods is a circumstance for the consideration of the jury.

14.   LARCENY—*Evidence—Possession of Other Stolen Goods not Mentioned in the Indictment.*—In a prosecution for burglary and larceny the court did not err in admitting testimony showing that the accused had in his possession when arrested other stolen goods not mentioned in the indictment.

15.   RECEIVING STOLEN GOODS—*Evidence—Possession of Other Stolen Goods.*—Evidence that the accused had in his possession when arrested other stolen goods, not mentioned in the indictment, is admissible on a prosecution for receiving stolen goods, knowing them to have been stolen, "as tending to show guilty knowledge."

16.   INSTRUCTIONS—*Refusing Instructions—Instructions Covered by Other Instructions.*—It is not error to refuse instructions where, so far as the instructions refused were proper, they were covered by other instructions given in the case.

Error to a judgment of the Corporation Court of the city of Roanoke.

*Affirmed.*

The indictment charges that the accused, H. A. Stapleton, and two others, to-wit, Herman Crews and James Wilcher, at the time and place mentioned, "feloniously and burglariously did break and enter, with intent to commit larceny, a certain dwelling house of John G. Paul   *   *   (situate, etc.), and   *   *   (certain jewelry described and valued in detail, of the aggregate value of $298.00), being the property and jewelry of John G. Paul, then and there situate in said dwelling

house, there and then feloniously and burglariously did steal, take and carry away  *   *   *," etc.

All three of the parties indicted demurred to the indictment and moved to quash the same on the single ground that it did not allege that the dwelling house was occupied.  The demurrer and motion to quash was overruled.  There is no assignment of error challenging the correctness of such action of the court.

Thereafter, the accused, Stapleton, elected to be tried separately and was first and separately tried.  The trial resulted in the following verdict:  "We, the jury, find the accused, H. A. Stapleton, guilty of grand larceny, as charged in the indictment, and fix his punishment at five years in the penitentiary."  In accordance with this verdict the judgment under review was entered.

The material facts, and other matters shown by the record, may be stated as follows:

The crimes of burglary and grand larceny, charged in the indictment, were committed on the night of October 25, 1922, in the following manner:  A few hours prior to the burglary, the accused, Stapleton, according to the testimony of Wilcher, a witness for the Commonwealth, told Crews and Wilcher that the Paul house "was empty—that there was nobody there and it would be a good place to hit it if we (they) would do it and he (the accused) said he would take the stuff  *   *  to Baltimore and sell it and give us (Crews and Wilcher) half of the money."  Wilcher and Crews, who was also a witness for the Commonwealth, both testified, in substance, to the effect that Stapleton was not present at the commission of the burglary—Wilcher and Crews being the active participants in that affair and in the taking of the stolen goods out of the dwelling house burglarized; but that in addition to having first incited and conspired with Wilcher and Crews, as aforesaid, thereafter and

immediately after the burglary, and when Wilcher and Crews were on their way with the stolen property to the house of the accused, Stapleton, the latter met them; thereupon they informed him that the burglary and theft had been successfully accomplished, and that they had then and there the stolen property. Whereupon the accused, Stapleton, went for an automobile, met these parties at another point, took them and the goods in the automobile out into the country, where Stapleton took a look at the stolen property, and Stapleton then and there received the property and took it in the automobile to his home.

It was shown by the testimony, for the Commonwealth, of witnesses other than Wilcher and Crews, that the stolen goods mentioned in the indictment were of the value of over $188.00, and that such goods, along with other stolen goods, the fruit of other burglaries and thefts by Crews and Wilcher, presently to be mentioned, were found in the possession of the accused in Baltimore, where he was arrested, on November 4, 1922, eleven days after the burglary and theft alleged in the indictment in the instant case.

Upon his arrest and being found in the possession of the stolen goods as aforesaid, the accused made the following statement to the officer who arrested him: "That he had gotten all of this stuff from Crews and Wilcher and that they had pawned it to him for eighteen dollars, and that he had had it for two or three weeks, and that it would not pay him his money and he brought it to Baltimore to pawn it or sell it or get his money, that he needed his money and wanted it and was coming to Baltimore on business and he brought this jewelry to pawn it or sell it to get his money." He said he "had not stolen this jewelry." He said "it might have been stolen but he did not steal it." He also stated to the

same officer that he "bought it from these two boys." Another statement made by the accused to another officer immediately following the statement just quoted was that he bought the jewelry "from a couple of crooks named Wilcher and Crews;" and when then asked when he got the jewelry, said he got it "yesterday."

It was also shown by the testimony for the Commonwealth that prior to the time the other stolen goods, not mentioned in the indictment, were found in the possession of the accused, Stapleton, he knew them to have been stolen; that he knew that they were the fruit of five or six burglaries or house breakings, accompanied with larceny of goods, committed by Wilcher and Crews; all of which, except one, occurred before the burglary and larceny mentioned in said indictment, and all of which stolen goods were received by Stapleton of Wilcher and Crews promptly following their theft, and on the respective times of his receipt of such goods Stapleton was expressly informed that the goods were stolen.

There was also testimony for the Commonwealth on the subject of the attempt by the accused to induce the attorney for Crews to get Crews to exonerate the accused from all complicity in the crimes charged in the indictment; which testimony is that of such attorney, and was as follows:

"Q. After you had been employed by Mr. Crews to represent him on this charge, did Mr. Stapleton come to your office?

"A. He did.

"Q. I will ask you to state what statement, if any, he made to you with reference to this matter?

"A. I cannot recollect the day, but it was one day last week. My best judgment is that it was Wednes-

day about five o'clock or a little after in the afternoon. I was getting ready to go home when Stapleton came in, and he says: "Mr. Challice, you are in a position to do me a great favor if you will." I says: "What is it about?" He says: "It is about these robberies here in Roanoke." I says: "Mr. Stapleton, I represent one of these boys and our interests are conflicting and perhaps you had better not talk to me about this thing." He says: "Well, I have got confidence in you and do not hesitate to talk to you," and I says: "If you feel like you want to talk, I will listen to anything you have to say."

"By Mr. Hunt:

"Q. Was he talking to you in confidence as an attorney?

"A. I told him he had better be careful how he talked, that I did not want to talk about his case, but he said he had confidence in what I was going to run for— that he knew I was going to run for Commonwealth's attorney next year, and I told him I had not given it any thought.

"By the court: Get right to the point.

"A. With reference to this conversation, he says: 'Mr. Challice, I am in for it on these robberies and if you will get the man that you represent, Crews, to take the full responsibility for it, I will give you $200.00.' I very frankly told him that I considered that an insult; that I did not think my honesty could be bought for two hundred or two million dollars, and I told him if that was the proposition he had to make that I did not want to talk about the case, and he says: 'You are in a position to do me lots of good. If you will just take that $200.00 and get Crews to assume the full responsibility for it so that I will not have to go to the penitentiary or the reform school, I will also agree to give

them $10.00 a week while they are down there,' and I told him that I could not consider his proposition for one moment, and would have nothing to do with it. * * *."

The following instruction was given at the request of the Commonwealth over the objection of the accused:

Instruction No. 3 for the Commonwealth. "The court instructs the jury that if property be stolen and recently thereafter be found in the exclusive possession of the prisoner, then such possession of itself affords sufficient ground for the presumption of fact that he was the thief; and in order to repel the presumption makes it incumbent on him, on being called for the purpose, to account for such possession consistently with his innocence. If he gives a reasonable account of it, then it devolves on the Commonwealth to prove that such account is untrue. If he give an unreasonable account of it, then it devolves on the prisoner to sustain such account by other evidence.

"You are further instructed that the circumstances under which the prisoner is found in possession of such property; the time and place, the conduct of the accused and his account of his possession are all matters for the consideration of the jury."

The following instructions, asked for by the accused, were refused:

Defendant's Instruction "A."—"The court further instructs the jury that the testimony of accomplices must be received with great care and caution, and if you believe from the evidence that either of the alleged accomplices were induced to testify falsely against the defendant, through either fear of punishment or hope of reward, you should disregard their testimony in its entirety and in such case it would be your duty to acquit."

Defendant's Instruction "B."—"The court further instructs the jury that the fact that the defendant did not exercise the same degree of care in coming into possession of the goods as would a man of ordinary care and prudence is not a matter for your consideration, but to convict the defendant the Commonwealth must show that the defendant had actual knowledge that the goods were stolen."

Defendant's Instruction "C."—"The court instructs the jury that even though you may believe from the evidence that the defendant was negligent in acquiring possession of the articles described, and that if he had have been more careful he would have discovered the names on said jewelry, is not sufficient.   He must have known at the time of possession that said articles were stolen."

The following instructions, however, were given at the request of the accused:

No. 4.   "The court instructs the jury that the defendant is presumed to be innocent and that that presumption carries all through the trial until the Commonwealth, upon whom the burden of proof rests, has shown you by clear, distinct and reliable evidence, and to the exclusion of all reasonable doubt, that the defendant is guilty, and if the Commonwealth has failed in this, it would be your duty to acquit."

No. 5.   "The court instructs the jury that they are not to charge the defendant with knowledge that the goods he received from Crews and Welcher were stolen from the fact that he did not exercise ordinary care, or that degree of care that a man of ordinary prudence would, under the circumstances, have exercised.   Actual knowledge of the larceny must be brought home to the defendant, H. A. Stapleton."

No. 7.   "The court instructs the jury that the testimony of accomplices must be received with great care

and caution, and if you believe the testimony of an alleged accomplice was false, and that he was induced to testify falsely either by fear of punishment or hope of reward, you must disregard that testimony in its entirety."

No. 8. "The court further instructs the jury that you are not to charge the defendant with notice that the goods were stolen from the mere fact that he obtained them at less than their true value, but to charge the defendant with guilty knowledge he must have had actual knowledge at the time he came into possession of the goods, and the burden of proving such actual knowledge is on the Commonwealth, and it must show you beyond a reasonable doubt that the defendant had such actual knowledge at the time that he came into possession of the goods."

No. 9. "The court further instructs the jury that although one found in possession of stolen goods is presumed to be the thief, this presumption is only *prima facie* and if the defendant makes such an explanation of how he came into possession of the goods as would leave a reasonable doubt in your mind as to whether or not he actually stole the goods or received them, knowing at the time that they were stolen, it would be your duty to acquit."

*A. B. Hunt* and *Woodrum & McCauley*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General,* for the Commonwealth.

Sims, P., after making the foregoing statement, delivered the following opinion of the court:

All of the questions raised by the assignments of error which are not obviously untenable will be disposed of in their order as stated below.

[1] 1. Is the indictment (which is for compound larceny, to-wit, charging burglary and larceny, and which contains only one count, in which both the burglary and larceny are charged) sufficient to support the conviction of larceny which was obtained by the Commonwealth in the instant case?

The question must be answered in the affirmative.

[2-4] It has been long settled and unquestioned by the authorities on the subject that on such an indictment there may be a conviction of the offense of burglary, *or* of the offense of larceny charged therein. *Speer's Case,* 17 Gratt. (58 Va.) 570; *Benton's Case,* 91 Va. 788, 21 S. E. 495; *State* v. *McClung,* 35 W. Va. 283, 13 S. E. 654. It is true that under such an indictment there cannot be a conviction of *both* of such offenses. See the cases just cited. It is also true that where there is a general verdict in a prosecution on such an indictment, not specifying of which offense the accused is found guilty, it will be considered to be a conviction of the major offense. *Speer's Case, supra; Vaughan's Case,* 17 Gratt. (58 Va.) 576; *Butler's Case,* 81 Va. 159; *Wright's Case,* 82 Va. 183; *Clark's Case,* 135 Va. 490, 115 S. E. 704. But the verdict in the instant case specifies the offense of which the accused, Stapleton, is found guilty, namely "grand larceny;" and so negatives the burglary so far as the accused, Stapleton, is concerned. As said in *Speer's Case,* at page 574, speaking of a verdict in a prosecution on precisely the same form of indictment as in the instant case, "* * the burglary may be negatived and the larceny found."

[5] Such an indictment is, indeed, primarily an indictment for larceny. The allegations concerning the

burglary are matters of aggravation only; and the test of the sufficiency of the indictment, as an indictment for larceny, as stated by Mr. Bishop (2 Bishop's New Cr. Proc. [2d ed.], section 772), is whether the indictment, when "stripped of the aggravating matter, embraces still a competent charge of larceny at the common law."

[6] The indictment in the instant case will unquestionably stand in the test just mentioned, and is, for that reason, a good indictment for larceny. It is such an indictment because it contains a competent specific charge of larceny at the common law.

[7] The case does not fall within the control or influence of such cases as the *Hardy and Curry Case*, 17 Gratt. (58 Va.) 592, strongly relied on for the accused, in which the indictment in terms charges only one major offense, which is held to also embrace the charge of all lesser offenses which are incident to and constitute elements of the major offense. In such cases, only such lesser offenses as are in their nature constituent parts of the major offense can be considered as charged in the indictment, and conviction of such character of lesser offenses only can be had and enforced under such an indictment. But such an indictment as that in the instant case is not one which in terms charges only one major offense. It in terms charges both the major and the lesser offense in question; and the conviction of the lesser offense charged may be had and enforced under such an indictment, because, as aforesaid, the indictment contains a competent specific charge of the lesser offense at common law, and not because the lesser offense is of such character that it is an element of the major offense charged.

[8] 2. Is the verdict and judgment convicting the accused, Stapleton, of the offense of grand larceny invalid because the larceny of which the accused was

found guilty is constructive larceny only, being in fact the offense of receiving stolen goods, knowing them to have been stolen, which is deemed larceny merely by reason of the statute (Code section 4448); whereas the larceny charged in the indictment is the actual asportation of the goods *animo furandi*, mentioned in the indictment, and such asportation at the same time that the burglary, also mentioned in the indictment, was committed?

The question must be answered in the negative, for two reasons:

[9] First: The verdict is a general verdict, so far as it specifies the offense of larceny of which it finds the accused guilty. It cannot be determined from the verdict whether the jury found the accused guilty of the actual or of the constructive larceny aforesaid. There was direct evidence for the Commonwealth to the effect that the accused was the instigator and the moving spirit in bringing about the larceny (*i. e.*, that he "procured, encouraged and counselled" Wilcher and Crews "to commit" the crime, Min. Syn. 13) in this, that with the intent to steal the property, the accused, before the event, instigated and directed the acts done by his associates in the commission of the crime, and indeed also assisted them in the taking and carrying away of the goods. This was ample evidence to support the verdict finding the accused guilty of the actual larceny, and fixing his punishment as a principal in the first degree (Code section 4764). And since, for all that appears in the record before us, the verdict may have been such a verdict, we cannot say that the verdict and judgment are invalid for the reasons in question.

[10, 11] Secondly: It is settled that under the statute (Code section 4448), on the charge of actual larceny, it was permissible to prove and obtain a conviction of the

constructive larceny aforesaid, consisting of the receiving of the stolen goods, knowing them to have been stolen. And there was ample evidence to support a verdict finding the accused guilty of the constructive larceny, if it was permissible for the Commonwealth to prove that such larceny was committed on a different and later date from that alleged in the indictment. That this was permissible is beyond question, since, being a case of grand larceny, it is a felony case; in which character of cases it has been long settled, and it is well understood, that the Commonwealth may prove the commission of the crime charged on a date different from that alleged, and sustain a conviction thereof. *Cool's Case,* 94 Va. 799, 26 S. E. 411; *Ailstock's Case,* 3 Gratt. (44 Va.) 650; *Puckett's Case,* 134 Va. 574, 113 S. E. 853.

[12] 3. Did the court err in giving instruction No. 3, asked for by the Commonwealth, by which the jury were in effect told that they might consider the fact of recent exclusive possession of the stolen property, under the circumstances set forth in the instruction, as evidence of the aforesaid constructive larceny, as well as of the actual larceny?

The question must be answered in the negative.

It is settled that the rule of evidence mentioned in the instruction in question is equally applicable when the prosecution is for the aforesaid constructive, as for actual, larceny.

As said in 2 Bish. New Cr. Prac. (2d ed.), section 959: "Not only is the evidence of possession relevant in cases of larceny, but in other cases also; and among those other cases is (where) the indictment (is) for receiving stolen goods. * * when goods are shown to have been stolen, recent possession of them is evidence against the possessor, tending to show either the original theft to have been committed by him, or a

guilty receiving by him, according to the other circumstances of the case."

[13] *State* v. *Freedman*, 3 Pennewill (Del.) 403, 53 Atl. 356; *State* v. *Richmond*, 186 Mo. 71, 84 S. W. 880; *George* v. *State*, 57 Neb. 656, 78 N. W. 259; and *People* v. *Weisenberger*, 73 App. Div. 428, 77 N. Y. Supp. 71, are cited for the accused, as containing a contrary holding; but they do not.   These cases hold only that the mere naked possession of stolen goods, unaided by other proof, is no evidence of the accused's having received the goods knowing them to have been stolen.   Mr. Bishop in the same section, 989, *supra*, of his 2 New Cr. Proc., extracts from which are above quoted, makes the same statement of the law.   But *recent* possession of stolen goods, under the circumstances set forth in the instruction under consideration, is a very different matter.   See *Myers' Case*, 132 Va. 746, 111 S. E. 463.

*State* v. *Brady*, 121 Iowa 561, 97 N. W. 62, 12 L. R. A. (N. S.) 208, is cited and relied on for the accused as holding that upon an indictment for burglary the accused cannot be convicted of receiving stolen goods, knowing them to be stolen.   An examination of that case discloses that it does not contain that holding.   It holds merely that bare evidence of the possession of the stolen goods is not sufficient of itself to support a conviction of burglary.   There is nothing in that holding in conflict with the views we have above expressed.   See also on this subject *Myers' Case, supra* (132 Va. 746, 111 S. E. 463).

[14] 4. Did the court err in admitting testimony showing that the accused had in his possession when arrested other stolen goods not mentioned in the indictment?

The question must be answered in the negative.

[15] It is settled that such evidence is admissible on

a prosecution for receiving stolen goods, knowing them to have been stolen, "as tending to show guilty knowledge." 2 Bish. New Cr. Proc. (2d ed.), section 990.

[16] 5. Did the court err in refusing to give instructions A, B, and C, asked by the defendant?

The question must be answered in the negative.

It is apparent from a reading of these instructions, along with the instructions given, above copied, that, so far as the instructions refused were proper, they were covered by other instructions given at the request of the accused.

The case will be affirmed.

*Affirmed.*