---

(73 App. Div. 428.)

### PEOPLE v. WEISSENBERGER.

(Supreme Court, Appellate Division, First Department. June 13, 1902.)

1. RECEIVING STOLEN GOODS—INTENT—SUFFICIENCY OF PROOF.
   The mere fact that stolen property is found in the possession of a person is not sufficient to authorize his conviction for receiving stolen goods, but his criminal intent in receiving the goods must be shown.

2. SAME—EVIDENCE OF ACCOMPLICE—SUFFICIENCY—CORROBORATION.
   Evidence of the burglar, in a prosecution for receiving stolen goods, relative to defendant's guilty knowledge, *held* to be sufficiently corroborated, as required by Code Cr. Proc. § 399, to warrant a conviction.

3. SAME—EVIDENCE—SUBSEQUENT TRANSACTIONS.
   In a prosecution for knowingly receiving stolen goods, evidence of the burglar was competent to show that he sold other stolen property to defendant after the date of the sale in question (March 14th), and prior to April 5th, and to show a conversation with defendant on March 22d, when a detective was in defendant's shop, in pursuance of the agreement as to what their conduct should be if any suspicious person was present, as such transactions were sufficiently proximate in time, and tended to show a carrying out of the plan of the parties.

4. SAME—HARMLESS ERROR.
   Where the evidence in a prosecution for knowingly receiving stolen goods clearly and satisfactorily shows defendant's guilt, a conviction will not be reversed by reason of the reception of erroneous evidence showing subsequent purchases by defendant of stolen goods from the same burglar, and their conduct in defendant's shop, in pursuance of a prior arrangement, when a detective was present.

5. SAME—INSTRUCTIONS.
   The refusal to instruct in a criminal case that defendant cannot be convicted unless the testimony of an accomplice, examined as a witness,

is believed, is not erroneous; the duty of the court being discharged by a general instruction as to the facts which must be found to sustain a conviction.

6. SAME—MISLEADING INSTRUCTION.

A requested instruction in a criminal case that defendant cannot be convicted unless the testimony of an accomplice is believed is misleading and erroneous, as apparently aimed at the credibility of the accomplice, when considered in connection with an instruction given that any reasonable doubt arising from the testimony of the accomplice will authorize an acquittal.

Appeal from court of general sessions, New York county.

William Weissenberger was convicted of knowingly receiving stolen goods, and appeals. Affirmed.

Argued before HATCH, McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

James W. Ridgway, for appellant.
Howard S. Gans, for the People.

LAUGHLIN, J. The defendant was indicted under section 550 of the Penal Code for having received stolen property on the 14th day of March, 1900, knowing the same to have been stolen. The property described in the indictment was two pairs of trousers, two coats, one feather boa, and one finger ring. It was shown by competent evidence that the property was owned by one Alfred O'Connor, whose house one Harry Hess burglarized about 3 o'clock in the afternoon on the 14th day of March, 1900, taking the property in question, which was found in the possession of the defendant, a licensed pawnbroker, by the police, on the 27th day of April, 1900, in searching his pawnshop under a search warrant. This, however, was not sufficient to warrant the conviction of the defendant. The people were also required to show the criminal intent on the part of the defendant in receiving the chattels with knowledge that they were stolen. People v. Ray, 36 App. Div. 389, 55 N. Y. Supp. 410; People v. Schooley, 149 N. Y. 99, 43 N. E. 536.

Hess, who had committed the burglary, testified on behalf of the people, and his evidence, if sufficiently corroborated under section 399 of the Code of Criminal Procedure, satisfactorily shows this remaining essential fact; and, although it was controverted by the testimony of the defendant, the facts and circumstances are such as to amply support the verdict of the jury. The testimony of Hess is to the effect that in the month of November, 1899, when he started "to do business with defendant," after having been in defendant's pawnshop two or three times, he said to defendant, "I often get this here stuff," and asked if defendant would "stand" for it, to which he says defendant replied, "Yes; I will stand for anything that comes along, no matter what it is;" that from that time to the 5th of April thereafter he had a series of transactions with the defendant, by which he sold to the defendant property which he had stolen, consisting of jewelry, silverware, and clothing, receiving in the aggregate about $800 in money therefor; that immediately after burglarizing O'Connor's house he took the property to defendant's pawnshop, which was only about a block away, and threw it on the

counter, saying, "Here is some more of the same old graft, Wesy;" that the defendant gave him $15 for the clothes, and about $12 for the ring; that he and the defendant had an understanding that if, at any time when he came, there was anybody in the pawnshop that "looked suspicious," he should say, "These are the clothes from the cleaners; let me have $1.50;" that in the month of January, 1900, when he entered the defendant's shop with some stolen property, Officer Day came in, and the defendant nodded his head, "as much as to go out," and he went out, but saw the detective grab for something; that he came back after the officer left, and the defendant told him that the officer wanted to get the "stuff," but that he did not succeed. In this last transaction Hess is substantially corroborated by Officer Day. Substantially all of the property to which Hess' testimony relates was found in the defendant's possession at the time the officer executed the search warrant, and identified by the owners who were then present, and it has been shown by their testimony that it was stolen. The defendant's books did not show the full names and addresses of the pawners, or the rate of interest charged, as required by law. In testifying in his own behalf the defendant attempted to explain that this omission was to avoid his being imposed upon by people claiming to have lost their pawn tickets. The coats were entered in the defendant's pawn book as having been pawned by "Williams" on March 14th, with other property identified as O'Connor's, but not included in the indictment; and the trousers were entered as pawned on the same day by "Rogers." The pawn book also showed a cape and bag which were stolen from O'Connor as pledged on March 15th under the name of "O'Neil." The boa was found in a box in which was a muff with a ticket showing a pawn number, and marked "Potter," and the pawn book showed that pawn number as property pledged on the 19th of April. The pawn book was in defendant's handwriting, and he gave no explanation of the manner in which or from whom be obtained the property, except that he denied ever having seen or had any transactions with Hess. He testified that he was familiar with the law requiring pawnbrokers to keep the names and addresses of the pledgors, together with the amount of the loan and rate of interest, and that it was unlawful for a pawnbroker to purchase secondhand property offered to him as a pledge or pawn, or to engage in secondhand business, and knew that it was the practice to give the pawner a pawn ticket, and to attach a coupon, with the address of the pawner, to the pledge, and in case of stolen property, where the thief was not found or convicted, he knew it was the practice of a pawnbroker to retain the pledged property unless repaid what he advanced thereon. The ring was found in a tray with 30 other rings in the show window where rings were placed for sale, and no tag showing the selling price or pawn ticket was attached to it, nor was any record thereof found on the defendant's books. Prior to the 14th of March a ring and some silver which had been stolen from Mrs. Holzwaser, and which Hess testified that he stole and sold to the defendant, were discovered in defendant's show window, and he refused to let the owner see them, and subsequently

claimed that he had bought them from a dealer; but, after an unsuc-
cessful attempt to get the owner to pay what he gave for them, he
surrendered them without pay. Some property stolen from Mrs.
Stryker on January 8, 1900, and entered on the defendant's books
as pawned on the same day under the name of "Sullivan," was dis-
covered four days later, and identified by the owner, who also ·iden-
tified Hess as the burglar; and Hess testified that he had stolen and
sold it to the defendant. The defendant claimed that this property
had been pledged for $25, which he demanded as a condition of giv-
ing it up, but, upon being taken before a magistrate, he surrendered
it all prior to the 14th of March, except a watch which had disap-
peared after ₒ being discovered in his possession; but before sur-
rendering it, and while refusing to surrender because the thief was
not captured, when told by an officer that the thief would be found
and convicted, the defendant said, "You will never get him," and
upon the officer asking, "Do you know him?" the defendant re-
plied, "Yes." Hess' father testified that, in an interview which he
had with the defendant subsequent to the arrest of Hess, he asked
the defendant, "Do you know that you have put a boy in trouble?"
and the defendant said "He knows that fact," and the witness asked
him to give up the property which he had bought from the school-
teacher, to which the defendant replied that he did not buy it from
the school-teacher, but of Hess, and that he was not "going to give
up any more; that he did give up all he could"; and, when asked if
he would do something toward getting a lawyer for Hess, the de-
fendant said he had done all he could do; that he "has give up some
stuff already before." There is no other evidence tending to show the
defendant's guilty knowledge, and there is much in his own testi-
mony inconsistent with the testimony of the people's witnesses upon
other points, indicating a consciousness of guilty knowledge. This
brief review of the evidence shows, we think, beyond even a doubt,
the testimony of Hess is sufficiently corroborated to warrant the
conviction of the defendant thereon. People v. Mayhew, 150 N. Y.
346, 44 N. E. 971; People v. Elliott, 106 N. Y. 292, 12 N. E. 602;
People v. Ogle, 4 N. Y. Cr. R. 349; Id., 104 N. Y. 511, 11 N. E. 53;
People v. Rivello, 39 App. Div. 454, 57 N. Y. Supp. 420.

After Hess had testified to selling stolen property to the defendant
on the 17th and 19th of November, and 20th of December, 1899,
and on the 8th, 13th, 18th, and 29th of January, 28th of February,
and 14th and 19th of March, 1900, without objection, the people
were allowed to show, under the defendant's objection and excep-
tion on the ground that it was after the date of the offense charged
in the indictment, that Hess sold jewelry to the defendant on March
22, silverware and jewelry on March 28, and jewelry on April 5,
1900, and a conversation at the time of the transaction on March
22d, when Hess claimed to ,have seen a detective in the store in citi-
zen's clothes, and to have gone through the form previously agreed
upon between him and the defendant in the event of such a con-
tingency. This evidence was competent. It was sufficiently proxi-
mate in time, and tended to show guilty knowledge on the part of
the defendant, as it showed a series of transactions, commencing

with the corrupt agreement between Hess and the defendant by which the latter was to buy any property stolen and brought to him by Hess, and that they were connected because it appears that the plan of procedure originally agreed upon in case of the presence of a detective or police officer was carried out, and gives rise to the inference that it was their understanding that all of these transactions were pursuant to the original arrangement. Mayer v. People, 80 N. Y. 364, 373; People v. Grossman, 168 N. Y. 47, 60 N. E. 1050; People v. McClure, 148 N. Y. 95, 42 N. E. 523. Furthermore all of this property was found in the defendant's possession at the time the O'Connor property was found, and was identified by the owners. It was all in court, identified and testified to, and introduced in evidence without objection or exception. In any event, the evidence was merely cumulative, and of no different nature or effect than that concerning the numerous prior transactions. We think that the guilt of the defendant was so clearly and satisfactorily established that the reception of this evidence, even if incompetent, does not require a reversal of the conviction.

The defendant's counsel requested the court to instruct the jury that they could not convict the defendant unless they believed that the testimony of Hess was true. This the court declined to charge, and the defendant excepted. We think the exception is not well taken. No question was raised but that the evidence required the submission of the case to the jury. We do not understand that either in a civil or criminal case the court is required to analyze and separate the evidence, and say to the jury that, unless they believe the testimony of a certain witness or witnesses, they must render a verdict in a particular way. That is not the province of the court, and, if it were, the rule would unduly protract the trial of causes, and make it very difficult to sustain any verdict. If counsel may single out the testimony of a particular witness and ask for such instruction, they may group witnesses or recite testimony, and ask for such instructions. The duty of the court in this regard is discharged by a general charge instructing the jury what facts it is essential that they should find in order to justify them in rendering a verdict in a particular way. People v. Tuczkewitz, 149 N. Y. 240, 253, 43 N. E. 548. Moreover, the request was misleading. The jury might infer from that and the subsequent request, to the effect that if they had any reasonable doubt arising from the testimony of Hess, as to its truth, it was their duty to acquit; that the request was aimed at the credibility of Hess. The testimony given by Hess was to be weighed in the light of the corroborating evidence and all the testimony in the case. Furthermore, this was a request for an instruction absolute,—that, as matter of law, the other evidence in the case would not warrant a conviction. We think there was sufficient evidence without the testimony of Hess to fairly justify the inference that the defendant knew at the time he received this property that it was stolen, and consequently, if the request were otherwise proper, it would have been error to have granted it.

The judgment should therefore be affirmed. All concur.