[Crim. No. 1178. Second Appellate District, Division. Two.—June 23, 1925.]

## THE PEOPLE, Respondent, v. FRANK JACOBS, Appellant.

[1] CRIMINAL LAW—RECEIVING STOLEN PROPERTY—EVIDENCE—INFERENCE.—In this prosecution, in which the defendant was convicted on the charge of receiving stolen property, the jury was justified in drawing from the testimony the inference that defendant came into possession of the stolen property in question, a Ford coupe, on the night of the theft thereof or soon thereafter.

[2] ID.—POSSESSION OF STOLEN PROPERTY—SUSPICIOUS CIRCUMSTANCES.—The possession of stolen articles by one other than the thief, together with suspicious circumstances, will justify the jury in convicting upon a charge of receiving stolen property, but if the person charged with receiving unlawfully is really the thief the charge of receiving stolen property must fail; and in this prosecution, the testimony of witnesses for the prosecution as to the identity of the thief, coupled with the alibi laid by defendant's testimony, was ample to support a finding by the jury that the Ford coupe in question was stolen by some person other than defendant, although it was in the latter's possession immediately or soon after it was stolen.

[3] ID.—RECEIVING STOLEN PROPERTY—GUILTY KNOWLEDGE—EVIDENCE.—In this prosecution, in which the defendant was convicted of receiving stolen property, the evidence showing, among other things, that defendant made tentative arrangements for the rent of the private garage within one and three-quarters hours before the theft of the car in question, that it was placed in the garage within an hour after the theft, that although the car was a new one and in running condition it was secreted in the garage, not once being taken outside the doors, for six weeks, that during that period defendant made numerous visits to the place, that the certificate of registration and number plates had been removed from their place on the car, that defendant paid the second month's garage rent, and that when arrested defendant denied ownership of the car before being told that the vehicle bore any relation to his arrest, was sufficient to sustain the implied finding of the jury that defendant received the car with knowledge that it was stolen.

---

2. Knowledge necessary to convict one of receiving stolen goods, note, 22 L. R. A. (N. S.) 833. See, also, 22 Cal. Jur. 557; 17 R. C. L. 86.

[4] ID.—RECEIPT OF STOLEN PROPERTY FOR GAIN—EVIDENCE.—In such prosecution, there having been evidence that defendant received the car with knowledge that it was stolen property and that he secreted it for six weeks, the jury was justified in drawing the inference that he received it for his own gain—for the purpose of making it or its proceeds his own if he could—and thus, also, for the purpose of preventing the owner from again possessing it.

[5] ID.—PRELIMINARY QUESTION—PREMATURE OBJECTION—MOTION TO STRIKE OUT TESTIMONY—WAIVER.—An objection to an incomplete preliminary question should be overruled; and where no objection is made to succeeding substantive questions the court is justified in assuming that the objector, having learned the nature of those questions and making no objections, has none to make; and a motion thereafter made to strike out the testimony of the witness is properly denied.

[6] ID.—PRIOR INFORMATION—EVIDENCE—SUFFICIENCY OF GENERAL OBJECTION.—In a prosecution on a charge of receiving stolen property, where the district attorney offers in evidence an information in the files of the superior court in an action which charged defendant, together with two others, with the crime of robbery, a general objection "to its being introduced in evidence in respect to this case," no ground being specified, is sufficient where the proffered evidence is inadmissible for any purpose.

[7] ID.—ADMISSIBILITY OF PRIOR INFORMATION—INSUFFICIENT OBJECTION.—In such prosecution, the defendant, on direct examination, having testified that in the prior action in which the information was filed he was charged with receiving stolen property, that he was not found guilty, but that the attorneys fixed it and he plead guilty, the information in such prior action was admissible for the purpose of refreshing defendant's recollection, in an endeavor to draw from him the fact that he had plead guilty of the crime of grand larceny, a crime lesser than and included within the charge of robbery made by the information; and a general objection to the admission of such information, no ground being specified, was not good.

[8] ID.—PREVIOUS CHARGES—CROSS-EXAMINATION OF DEFENDANT—MISCONDUCT OF DISTRICT ATTORNEY.—In such prosecution, the defendant, on direct examination by his own counsel, having testified to numerous occasions on which he was arrested, and his counsel having made no objection to the cross-examination by the district attorney, in which defendant was questioned with reference to the various charges made against him, nor asked any admonition

---

7. Right, for purpose of cross-examination, to inspect paper used by witness to refresh memory, note, 22 **L. R. A. (N. S.)** 706. See, also, 28 **R. C. L.** 596.

to the jury concerning such questions, there was no merit in the contention that the district attorney was guilty of misconduct in asking such questions.

[9] ID.—CONSIDERATION OF EVIDENCE—INSTRUCTIONS.—In this prosecution on a charge of receiving stolen property, while the giving of defendant's requested instruction "that your deliberation must be based upon and you must take into consideration in arriving at a verdict, all the evidence submitted to you by the prosecution and by the defendant, including documentary evidence that has been introduced as such, and you are to determine, whether or not, the written, or documentary evidence, together with the rest of the testimony tends to prove the allegations of the information," would have done no harm, it was unnecessary, as it contained nothing but what every person qualified for jury duty knows, and the refusal thereof was not error, particularly as the court did instruct the jury that in discharging its duty the sole guide was to be "the evidence introduced in this trial and the law as given you by the court."

[10] ID.—PRIOR ARREST ON NUMEROUS OCCASIONS—EVIDENCE—INSTRUCTIONS.—In such prosecution, defendant's requested instruction that "there has been some evidence introduced in the trial of this cause tending to show that the defendant has been arrested on numerous occasions on suspicion of having committed various offenses and on one occasion that he plead guilty as a juvenile to a felony charge. In this connection you are instructed that in your deliberations on the guilt or innocence of the charges for which he is now on trial, you are to totally disregard such testimony and to confine yourself to such evidence as has been introduced on behalf of the people and the defendant relative to the crime alleged in the information filed against him," was misleading, if it did not actually contain a misstatement of law, and was properly refused.

[11] ID.—EVIDENCE—REASONABLE DOUBT—VERDICT—INCONSISTENT CHARGES.—The jury in a criminal case may not convict unless its members be convinced beyond a reasonable doubt that the defendant is guilty of the specific offense charged; and where the information contains inconsistent charges, the jury is not required to acquit the defendant under each merely because the evidence, in theory, would justify a verdict of guilt under either. (On denial of rehearing.)

---

(1) 34 Cyc., p. 528, n. 6.   (2) 34 Cyc., p. 628, n. 6.   (3) 34 Cyc., p. 527, n. 97.   (4) 34 Cyc., p. 527, n. 2.   (5) 16 C. J., p. 881, n. 81. (6) 16 C. J., p. 876, n. 20.   (7) 16 C. J., p. 875, n. 19.   (8) 40 Cyc., p. 2620, n. 54.   (9) 16 C. J., p. 1006, n. 60, p. 1063, n. 85.   (10) 16 C. J., p. 1036, n. 65.   (11) 16 C. J., p. 759, n. 88.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. J. Clark for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney and John W. Maltman, Deputies Attorney-General, for Respondents.

WORKS, J.—Defendant was tried under an information in two counts. Under the first of these the charge was grand larceny. Under the second the charge was receiving stolen property. The property concerned in both charges was a .Ford automobile—a coupe. The evidence at the trial showed without dispute that the car was stolen one evening between 8:30 o'clock and 9:15 o'clock from a place on a public street where it had been parked by the owner. It was also shown without dispute that the vehicle was placed in a certain private garage on the same evening and that it remained there continuously for a period of about six weeks, at the end of which time it was removed by police officers. Other facts will be stated as we proceed with a discussion of the various points involved in the cause. Defendant was acquitted on the charge of grand larceny, but was convicted on the charge of receiving stolen property. He appeals from·the judgment of conviction and from an order of the trial court denying his motion for a new trial.

[1] One of the contentions of appellant is that the evidence was insufficient to show that he ever received the stolen property. The garage in which the car was found was upon the property of a Mrs. Johnson. This individual testified that appellant came to her residence, which was located on the same property, at about 7:30 o'clock on the evening on which the car was stolen; that he was accompanied by another man who was unknown to Mrs. Johnson and whose identity was never ascertained by her; that the two came to the place in a Ford touring car, and that appellant inquired whether she had a garage for rent. Upon being informed that she had, appellant said, according to

73 Cal. App.—22

Mrs. Johnson, that "they were looking for one, and they would be back later to let me know if they would take it." The witness further testified that on the same evening, between 9 and 9:30 o'clock, she heard a car driven into the garage. On the next morning she saw there the Ford coupe which afterward turned out to be the stolen property. On that same day, Mrs. Johnson further testified, appellant came to her place, and she said also that he thereafter came to the premises about once each week during the time the car was in the garage. On these various occasions she testified she talked with him only about the weather, except that at one time, which she did not identify particularly, he said that there was something wrong with the car and that it needed repairing. She further testified that on these various visits to her place appellant usually came "with someone else," and also: "What did he do when he came there, if anything? A. Well, he talked to my husband, I think, two or three times; he went in the garage; and the other times he stayed out in the machine [in which she testified he came]. . . . Q. What do you mean by saying that he went into the garage . . . ? A. He unlocked the door and went in [using a key which was in his possession]. Q. Unlocked the door and went in. Did he stay any length of time? A. No. Q. Other times he would drive in there with the car, and not go to the garage at all, you say? A. Yes." The garage had been rented by the month. The rent for the first month was handed to a daughter of Mrs. Johnson, at the front door of the family residence, on the night and at the time when the stolen car was driven into the garage. The girl testified that the money was paid to her by a man whom she did not know, and not by appellant. About two weeks after the rent for the second month fell due appellant made one of his visits to the Johnson place, according to the testimony of Mrs. Johnson, and said to her "that he was sorry he was late in paying his rent." He then handed her his check for the amount. Prior to this occasion the stolen car had been located by the police and an officer was lying in wait upon the Johnson premises at the time of the delivery of the check. He then made his appearance and took appellant into custody. The officer testified that he said to appellant, immediately preceding the arrest, "we have got you on the ground at last" and that before anything further

was said appellant responded, "that ain't my car." In order to show that no unfavorable presumption is to be indulged against the prosecution for its failure to produce Mrs. Johnson's husband as a witness, it is to be observed that he died before the action came to trial. We think the jury was justified in drawing from the testimony above recited the inference that appellant came into possession of the stolen car on the night of the theft or soon thereafter.

[2] The further point is made by appellant that there is in the record no evidence that he acquired possession of the Ford coupe with knowledge of the fact that it was stolen. It having been established by uncontradicted evidence that the car was stolen, respondent sees evidence of guilty knowledge upon the part of appellant in the evidence above recited as to his possession of the property. It is said that, in the absence of a satisfactory explanation by appellant, his possession of the stolen car was sufficient to support a conviction on the charge of receiving stolen property. The question is evidently one of first impression in this state, for we are referred to no California cases on either side of it, and have found none. There is, however, abundant authority upon the point, and upon related questions, elsewhere. We shall cite many of these cases, but we desire it to be understood that in doing so we are continually having in mind what is termed in the cases the *recent* possession of stolen property—that is, the possession of it immediately or soon after it was stolen, and not a possession acquired after a considerable length of time following the theft. It has been decided in a few cases that the possession of stolen articles, while warranting an inference of guilt of larceny, will allow no such inference where the charge is that of receiving stolen goods. Among these cases are *Sartorious* v. *State*, 24 Miss. 602, and *State* v. *Adams*, 133 N. C. 667 [45 S. E. 553], although it is remarked in the opinion in the first of the two that "there might be cases where recent possession of stolen goods, united with other circumstances, would warrant the presumption of a felonious reception, and not of a larceny of the goods." In another case the dogmatic assertion is made that the "recent possession of stolen property is not evidence" of knowledge that it was stolen (*People* v. *Lardner*, 296 Ill. 190 [129 N. E. 697]). Doubtless, however, it was not intended by the ad-

judication to announce such an extreme rule, for authorities are cited in support of the statement which decide only that possession *alone* is not evidence of guilty knowledge of the theft. There are many cases which state this latter rule. Among them are *Durant* v. *People,* 13 Mich. 351, *People* v. *Weissenberger,* 73 App. Div. 428 [77 N. Y. Supp. 71], *State* v. *Richmond,* 186 Mo. 71 [84 S. W. 880], *State* v. *Malvarosa,* 30 Del. (7 Boyce) 451 [108 Atl. 95], *Grant* v. *State,* 87 Tex. Cr. 19 [218 S. W. 1062], *State* v. *Lippman* (Mo.), 222 S. W. 436, *Rosen* v. *United States,* 271 Fed. 651, *Sellers* v. *United States,* 299 Fed. 258, and *Stuart* v. *State,* 97 Tex. Cr. 652 [263 S. W. 928]. Several of these cases, however, and some others, state as a fixed rule the proposition so grudgingly mentioned in *Sartorious* v. *State, supra,* that is, that the possession of stolen property, when attended by other suspicious circumstances, will justify a conviction upon a charge of receiving stolen property. These decisions are *Goldstein* v. *People,* 82 N. Y. 231, *Jenkins* v. *State,* 62 Wis. 49 [21 N. W. 232], *State* v. *Freedman,* 3 Penne. (Del.) 403 [53 Atl. 356], *State* v. *Malvarosa, supra, Grant* v. *State, supra, Rosen* v. *United States, supra, Sellers* v. *United States, supra,* and *Stapleton* v. *Commonwealth,* 140 Va. 475 [124 S. E. 237]. A number of adjudications adhere to the rule contended for by respondent, that, as in the case of charges of larceny, the possession of stolen articles, when not satisfactorily explained by the possessor, is sufficient to justify a conviction under a charge of receiving stolen goods. These are *People* v. *Weldon,* 111 N. Y. 569 [19 N. E. 279], *State* v. *Guild,* 149 Mo. 370 [73 Am. St. 395, 50 S. W. 909], *State* v. *Miller,* 159 Mo. 113 [60 S. W. 67], and *Boyd* v. *State,* 150 Ala. 101 [43 South. 204].

If we take as a guide the cognate rule in this state concerning charges of larceny, we should possibly be justified in adopting as principles of our criminal jurisprudence each of the two rules last stated in the preceding paragraph; that is, that either, first, the possession of stolen property, when attended by other suspicious circumstances; or, second, the possession of such property, when not satisfactorily explained, will support a conviction on a charge of receiving stolen property. If we take the rule in California in cases of larceny as a guide, there is apparently no difference between the first and second principles just stated as applying

to charges of receiving stolen property, for it has been determined, in larceny cases, that where there is no explanation of his possession by a possessor, the possession alone will not justify a conviction, but that there must be other incriminating circumstances (*People* v. *Reed,* 58 Cal. App. 7 [207 Pac. 1025]). It is to be noted, also, that where the possessor attempts to explain, but the explanation is unsatisfactory, that is in itself a suspicious circumstance. Without, however, adopting both the rules stated above as first and second, and assuming, but not deciding, that there is a difference between them, we are satisfied that it is a correct principle that the possession of stolen articles, together with suspicious circumstances, will justify the action of a jury in convicting upon a charge of receiving stolen property. From this rule there is but little dissent, and we are in accord with the reasoning of the opinions which in such great number adhere to it.

In making an application in the present case of the principle which we have just stated and to which we have expressed our determination to assent, there is a circumstance which requires a special consideration. Running through the decided cases on the subject there is constant mention of the fact that the rule is not to be applied in a given case unless there is evidence that the property charged to have been feloniously received was stolen by some person other than the individual charged with illicitly receiving it. This is, of course, a proper limitation upon the rule, for if the person charged with receiving unlawfully is really the thief the charge of receiving must fall. The two crimes are inconsistent when sought to be fastened upon the same individual, if the charges arise out of the theft of particular property and the felonious receiving of the same property following that theft. Under such a condition, possession of the stolen property, with attending suspicious circumstances, is evidence of larceny and not evidence upon the charge of receiving stolen goods. This principle inheres in many of the cases cited above to the various propositions stated, and it is evident that it is a just one. We are to inquire, then, what evidence there was in the present case to show that the car was not stolen by appellant. He himself accounted for his whereabouts on the evening of the theft in such a manner as to demonstrate, if the jury believed him, that he was

not the thief. He in effect, therefore, denied that he was the thief. The alibi thus laid by his testimony was directly and positively supported by the oath of four other witnesses. Appellant also gave testimony which cast grave suspicion on one Shattuck as the thief, if, in fact, it were not sufficient to support a verdict against that individual if given upon a trial had under information charging him with the theft. Moreover, Shattuck, who, according to the testimony, was known to several of the witnesses other than appellant, was seen by none of them, nor by appellant, after the day of appellant's arrest, although seen often before. There was also testimony that Shattuck had been sought as a witness at the trial of appellant, but that he could not be found. Again, it is to be remembered that Mrs. Johnson's daughter testified that some person other than appellant placed the coupe in the garage on the night of the theft. We think this evidence was ample to support a finding by the jury that the coupe was stolen by some person other than appellant. In fact, as already observed, the jury acquitted appellant upon the charge of larceny which was contained in the information.

[3] It is plain—from the evidence which we have stated during our discussion of the point that it was not shown that appellant ever received the stolen car—that his acquisition of the possession of it was "recent," within the meaning of that term as it is employed in the cases above cited. In determining whether there was evidence that he received the vehicle with knowledge that it had been stolen, it remains only to detail the suspicious "circumstances" disclosed by the evidence and which were proper to be considered by the jury in connection with the fact of appellant's possession. A part of the evidence touching this subject has been stated already. It was testified, in any view of the evidence, that appellant made his tentative arrangement for the use of the garage within one and three-quarter hours before the theft of the car and that it was placed in the garage within an hour after the theft. The evidence shows without dispute that the coupe was a new one, having been bought by its owner but ten days before the theft and having been driven but 223 miles. The owner testified that when it was stolen it was in good condition. The police officer testified that he drove the car from the garage

on its own power and that there were then in it four or five gallons of gasoline. Despite these facts, it appeared without contradiction that the car was secreted in the garage, not once being taken outside the doors, for six weeks. The evidence showed, also without dispute, that when the police found the vehicle the license plates and the certificate of registration had been removed from their places on it and that the latter was found under one of the seats. The license plates were never found. The police officer testified that when appellant was arrested he denied ownership of the car before being told that the vehicle bore any relation to his arrest. We think this evidence supported the finding implied in the verdict that appellant received the car with knowledge that it was stolen.

[4] It is contended that the evidence was insufficient to show that appellant received the stolen car either for his own gain or to prevent the owner from again possessing it. This point is concluded by the state of the evidence shown in the discussion of the two questions of which we have above made disposition. There being evidence that appellant received the car with knowledge that it was stolen property and that he secreted it for six weeks, the jury was justified in drawing the inference that he received it for his own gain—for the purpose of making it or its proceeds his own if he could—and thus, also, for the purpose of preventing the owner from again possessing it.

[5] The defense of appellant in the trial court was conducted—not, however, by the same counsel who represents him on the appeal—with an amazing degree of timidity, indecision and lack of skill. We make mention of that state of affairs now, as it appears to some extent in connection with a point about to be considered, but we shall have occasion later to dwell on it more at large. As a prelude to the question now to be discussed, we quote a portion of the record, a police officer being on the witness-stand, purposely omitting the name of the counsel for defendant: "Q. Calling your attention to the People's Exhibit No. 1, being the Superior Court files No. 15102, charging William— [Counsel for Defendant] : Just a moment; I object to that as incompetent, irrelevant and immaterial. The Court: Well, I don't know, the question is not finished yet, so I cannot possibly determine. Finish the question. Mr. Costello:

Q. —charging William Rose, Frank Jacobs and Harold Kirtner with the offense of robbery, dated February 11, 1920? [Counsel for defendant] : At that point, I want to raise the objection, if your Honor please. The Court: Raise it; the question is not finished, but you can make it, and I will overrule it. Go ahead and make your objection; the question is not finished. Proceed, Mr. Costello. Q. —charging the defendant with the offense of robbery; I will ask you now if you were the arresting officer in that case, or the investigating officer? A. Both. Q. . . . —is this the same Frank Jacobs that was charged with that offense at that time? A. Yes, sir. Q. And were you present . . . when this defendant was called for trial? A. Yes, sir. Q. And were you present when he entered his plea to the charge in this information, charging him with robbery? A. Yes, sir. Q. And were you present when he entered a plea of grand larceny [*sic*] to this charge, an offense included in that robbery— . . . A. Yes, sir. Q. And this is the same Frank Jacobs that entered his plea to the offense of grand larceny, on June 14th, 1920. A. Yes, sir. Mr. Costello: You may cross-examine. [Counsel for defendant] : I move, may Your Honor please, that the entire testimony of this witness be stricken, and the jury admonished to pay no attention to same. The Court: Motion denied." What is above set forth was the entire testimony of the witness, except for a preliminary question or two asking for his occupation, and excepting a cross-examination which followed the denial of the motion to strike. It is now insisted that the trial court erred in permitting the testimony to stand after the objection which was interposed and after the motion to strike was made. Appellant's present counsel frankly concedes, as of course he must, that the record on which he seeks to present his contention is not ideal. He voluntarily points out that the objection came too soon; that no objections were made to questions interposed after what were really but preliminary questions had been answered, and that the motion to strike specified no ground. He seeks to avoid in various ways the dilemma in which he finds himself. He first says that the court treated the objection which was made in such a manner that notice was conveyed that all "objections to such questions would be overruled," and that it would have been useless and there-

fore it was unnecessary to interpose them. We cannot accede to this view. There was no such notice conveyed by the court's attitude. The only objection which was made was futile for two reasons: It was interposed to an incomplete question, and as far as the question had proceeded it was apparently but a preliminary question. In fact, when it was completed it was actually but a preliminary question. In form, also, the only notice conveyed by the court's attitude toward the objection was that it must be overruled because the question was not complete. He said, "the question is not finished yet, so I cannot possibly determine." This was a very proper attitude and the objection should have been overruled for the reason stated, although the court did not overrule it. Appellant insists that, while the motion to strike stated no grounds, the court was sufficiently apprised, by the objection which had been interposed, of the grounds intended. This cannot be so. No objection having been made to any substantive question, the court could not have guessed what point was in the mind of counsel when he objected to a mere preliminary question. In truth, the court could not have imagined, and appellant's counsel probably did not know, what questions of substance would follow the preliminary question which the prosecution was finally allowed to complete. Further, the court was justified in assuming for the time being, when no objections were made to substantive questions, that the objector, having learned the nature of those questions and making no objection to them, had none to make. Surely, there was nothing in the record to apprise the court of the point sought to be presented by the motion to strike the testimony, and such a motion is never good unless it is addressed to evidence which has gone in under objection, unless opportunity to make the objection is absent (*People* v. *Bradley,* 23 Cal. App. 44 [136 Pac. 955]). The point which is now pressed is without merit.

[6] The district attorney offered in evidence the information found in the files of the superior court in the action mentioned above, number 15102, which charged appellant, together with two others, with the crime of robbery. To this offer an objection was made thus: "I object to its being introduced in evidence in respect to this case." The objection was overruled and the information was received in

evidence. It is contended that the ruling was error. It will be observed that no ground was specified in the objection, but none was necessary if the evidence was inadmissible for any purpose. In one case the record showed only, after stating a question which was put to a witness, that "counsel here objected to the question." The supreme court said: "The defendants claim that the evidence was not admissible for any purpose, and that a statement of the grounds upon which it was objected to would have been superfluous, and was not therefore required. This view is based upon what appears to us to be the proper rule in such cases, and we see no good result to be accomplished by holding parties to a more strict and rigid practice in these matters" (*Nightingale* v. *Scannell*, 18 Cal. 315). In a later adjudication an order granting a motion for a nonsuit was upheld upon a ground not mentioned in the motion, this upon the theory that the defect in plaintiff's proof was one which could not have been cured and that therefore it was not necessary to give him the opportunity to supplement his evidence through the making of a specific objection notifying him of the nature of the defect (*Daley* v. *Russ*, 86 Cal. 114 [24 Pac. 867]). It is to be observed that the opinion in the case last cited did not proceed upon the theory that the order involved was one granting and not one denying a motion for nonsuit. The case was decided solely upon the question arising from the form of the motion. We make specific mention of the two cases noted for the reason that apparently in all adjudications later than *Daley* v. *Russ* which cite *Nightingale* v. *Scannell* the general objection of immateriality, irrelevancy and incompetency was made. The latest of these cases appears to be *Scott* v. *Times-Mirror Co.*, 181 Cal. 345 [12 A. L. R. 1007, 184 Pac. 672]. Under all the decisions, in the matter now under discussion, there seems to be no difference between "I object to the question," and "I object to the question on the ground that it is immaterial, irrelevant and incompetent." The entire reasoning of *Nightingale* v. *Scannell* supports that view, and the continual citation of the opinion in that case in the later adjudications would seem to carry the doctrine to the present moment.

[7] It becomes necessary, then, to determine whether the information in cause numbered 15102 was admissible for any purpose. The information was filed when appellant was a minor and was therefore subject to the provisions of the juvenile court act. Replying to questions propounded to him by his counsel on his direct examination, appellant testified that in the action in which the information was filed he was charged with receiving stolen property; that he was not found guilty, but that "the attorneys fixed it" and he plead guilty; and that he was sentenced to eleven months' imprisonment at the reform school at Ione, he being that near the age of twenty-one. On cross-examination appellant testified that he had been convicted of a felony, referring to his plea of guilty just mentioned, and that the felony was receiving stolen property; that he was not charged with robbery; and that he did not plead guilty of grand larceny as a lesser offense included within the charge of robbery. It was at this juncture that the information was offered, showing that the charge against appellant was robbery.

When appellant testified on his direct examination that he had plead guilty to a charge of receiving stolen property, and on his cross-examination that the crime to which he had so pleaded was a felony, he stood impeached as a witness, for under the law concerning impeachment the showing of a plea of guilty is beyond doubt equivalent to proof of a conviction. This impeachment having been fixed partially on the direct examination—and the district attorney might have ascertained the whole situation on cross-examination if it had not been brought out on the direct (Code Civ. Proc., sec. 2051; *People* v. *Chin Mook Sow,* 51 Cal. 597; *People* v. *Arlington,* 123 Cal. 356 [55 Pac. 1003])—it was proper for the prosecuting officer to go further. He was entitled to show on the cross-examination the name of the felony of which appellant had been convicted (*People* v. *Fouts,* 61 Cal. App. 242 [214 Pac. 657]). Appellant having testified that the conviction was upon a charge of receiving stolen property, it seems plain that on the cross-examination the prosecutor was entitled to show that the conviction—appellant's plea of guilty—was of the crime of grand larceny. The testimony of appellant was not only that he had plead guilty of the crime of receiving stolen goods, but was also to the effect that it was with the com-

mission of that crime that he had been charged. It seems to us that, for the purpose of refreshing appellant's recollection, the prosecutor very properly read to him the information in an endeavor to draw from him the fact that he had plead guilty of the crime of grand larceny, a crime lesser than and included within the charge made by the information, a charge of robbery. It having been proper to use the information for that purpose—and that was really the manner in which it was "offered"—the very general objection interposed by appellant's counsel at the trial was not good.

[8] A reversal is contended for upon the ground of the alleged misconduct of the district attorney during the progress of the trial. In considering the point it becomes necessary again to refer to the manner in which appellant's defense was mismanaged, as an introduction to the matters concerning which the charge of misconduct is made. The plea of guilty which had carried appellant to Ione for a detention of eleven months' duration was entered in June, 1920, a fact which, as we have observed, was brought out by his counsel on direct examination. This circumstance was not as bad as some of the other items in the mismanagement of the defense, as it might perhaps be justified upon the theory that the same showing would have been made by the prosecution on the cross-examination in any event, and that no harm could therefore come from it. However, in addition to this item, appellant's counsel at the trial brought out from him on direct examination these facts: On July 5, 1917, appellant was arrested on a charge of "suspicion of grand larceny" and was later "released." On September 19, 1917, he was arrested on a charge of grand larceny, with the same result. August 8, 1919, he was arrested, again on a charge of grand larceny, but was "turned loose" when his mother produced a bill of sale for the automobile which he was charged with stealing. On February 3, 1920, he was arrested "on suspicion of robbery," but was again "turned loose." On February 26, 1920, he was again arrested "under suspicion of robbery" and was again released. On November 2, the year apparently having been 1920, he was arrested on a charge of robbery and was again "turned loose." Appellant says in his brief on this appeal that

these facts were drawn out for the purpose of convincing
the jury that, consistently and continually, he had been
persecuted by the police, and that the present action was but
a continuation of the oppressive treatment to which he had
been subjected. That the effect on the jury was quite the
contrary may readily be imagined. On the cross-examina-
tion of appellant the district attorney asked him the follow-
ing questions, which we number for convenience: 1. "The
case being 15102. . . . Shelby Jacobs, Frank Jacobs, Dome-
nick Antone, C. Shipley, and E. L. Lapway, was sworn and
testified on behalf of the defendant,—do you remember
that?" 2. "Now, at the time that those proceedings in the su-
perior court, you were charged with the offense of robbery,
and plead guilty to grand larceny, along with another young
man by the name of Rose and another young fellow by the
name of Klackner,—isn't that true?" 3. "Well, you were
in on the charge of robbery, with these two defendants?"
4. "At the time that you plead guilty in the superior court,
weren't you charged with the offense of robbery, and
through Mr. Dominguez you accepted a plea of grand
larceny, and the offense, including that of robbery [*sic*]?"
5. "Did you go, in company with two other boys, and steal
an automobile on July 5, 1917, which was standing in front
of the Los Angeles High School, and take it to Venice
and abandon it?" 6. "Now, since July, 1917, you have
been in the courts every year since 1917, haven't you?"
7. [After reading the information in cause number 15102]
"I am just asking you the simple question, were you not
charged with robbery with those two other boys, and that
you afterwards plead guilty to grand larceny, and went to
Ione?" 8. "You did not know those two boys?" 9. "And
you were charged in this information with robbery of the
man that is alleged in there."

It is contended that the district attorney was guilty of
misconduct in propounding these questions. The claim is
met, as to questions numbered 1, 2, 3, 4, 7, 8 and 9, by
what we have said in disposing of the contention that the
trial court erred in permitting the district attorney, in the
presence of the jury, to read to appellant the information in
cause number 15102, with the possible exception of question
8. All the interrogations mentioned, if we except number
8, were surely parts of a proper cross-examination. The

putting of so many queries along the same line was justified by the fact that appellant persisted to the end in asserting in his answers that the charge against him in the action mentioned was receiving stolen goods and not robbery, and that he had plead guilty to the former charge and not to a charge of grand larceny. If we concede that question 8 was not proper cross-examination it at once appears that the question was not harmful. It having transpired that appellant had plead guilty to some charge under the information making complaint jointly against him and the two others mentioned in the pleading, we cannot perceive that he could have been contaminated, or his defense in this action injured, by the mere question whether he knew the others. This is especially true for the reason that there is nothing in the record, aside from the fact that they were charged with the crime jointly with him, to show that they were disreputable characters. Question 5 doubtless related to one of the charges against appellant concerning which he had testified on his direct examination. At any rate it touched upon an alleged occurrence on a date upon which appellant testified that he had been arrested upon a charge of "suspicion of grand larceny," and we cannot assume that the question was unconnected with the matter out of which sprang the arrest. Question 6 should not have been asked, but upon objection being made it was immediately withdrawn by the district attorney. Defendant's counsel did not, however, ask that the jury be admonished to disregard the fact that the question had been propounded. If he had made the request the injurious effect of the question could have been removed by the admonition. As bearing generally upon the charge that the district attorney was guilty of misconduct in asking the nine questions, it is to be observed that defendant's counsel sat supinely by and made no objection whatever to any of them except question 6. Not only so, but he asked no admonition concerning any of them. Under all the circumstances incident to the claim of misconduct, we are convinced that it cannot be upheld.

[9] The trial judge refused to instruct the jury "that your deliberation must be based upon and you must take into consideration in arriving at a verdict, all the evidence submitted to you by the prosecution and by the defendant,

including documentary evidence that has been introduced as such, and you are to determine, whether or not, the written, or documentary evidence, together with the rest of the testimony tends to prove the allegations of the information." It is contended that the refusal was error. The giving of the instruction would have done no harm, but we think it was unnecessary. It contained nothing but what every person qualified for jury duty knows. Moreover, the judge told the jury in an instruction which he gave that in discharging its duty the sole guide was to be "the evidence introduced in this trial and the law as given you by the court." This language covered the essence of the instruction which was rejected.

[10] The trial judge refused to give the following instruction: ". . . there has been some evidence introduced in the trial of this cause tending to show that the defendant has been arrested on numerous occasions on suspicion of having committed various offenses and on one occasion that he plead guilty as a juvenile to a felony charge. In this connection you are instructed that in your deliberations on the guilt or innocence of the charges for which he is now on trial, you are to totally disregard such testimony and to confine yourself to just such evidence as has been introduced on behalf of the people and the defendant relative to the crime alleged in the information filed against him." This proposed instruction was properly refused for the reason that it is misleading in part, if it does not actually contain a misstatement of the law. It was sought by the proposed instruction to have the court tell the jury that its members were not to consider appellant's plea of guilty to the felony charge in deliberating upon the issue of his guilt or innocence. It is practically certain that this language would have been understood by the jury to mean that the plea of guilty was not to be considered for any purpose. In this respect, then, it was misleading. As to the possibility that the proposed instruction contained an erroneous statement of the law, this is to be said: The plea of guilty was proper to be considered as an impeachment of appellant as a witness. Was not this matter of his impeachment a factor in the determination of the ultimate question as to whether he was guilty or innocent? At any rate, the instruction

was properly refused on the ground that it was misleading in the respect mentioned.

Judgment and order affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 22, 1925, and the following opinion then rendered thereon:

WORKS, J.—Appellant petitions for a rehearing of this cause. [11] The principal ground upon which the request is based is this: It is said that the evidence which we have recited as supporting the verdict of guilty on the second count would as well have sustained a conviction on the first count, and that, therefore, there could properly have been a conviction on neither count. This sounds startling, but it is indubitably the ground which is taken in the petition. Not only so, but authorities are cited which it is insisted uphold the contention. In order that there may be no misapprehension as to the exact point made by appellant, we append two sentences from the petition, occurring immediately preceding the citation of authority, with his italics: "The true rule is that where circumstantial evidence is relied upon for a conviction *of any crime* the evidence must not only be consistent with the guilt of the defendant *of that specific offense* but absolutely inconsistent with any other rational hypothesis. Where the evidence is equally consistent with the defendant's having committed either one of two crimes the proof does not measure up to the standard which the law has fixed." In support of his contention appellant first cites *People* v. *Fagan,* 98 Cal. 230 [33 Pac. 60]. That case in no way sustains his argument. The defendant there was charged with grand larceny alone and the court held that the evidence was insufficient to support the verdict of guilty which was rendered against him. In connection with the determination of that point, the only point discussed by the court, it was remarked that perhaps the evidence would have sustained a charge of receiving stolen goods. The only other California cases which are cited are *People* v. *Dick,* 32 Cal. 213, *People* v. *Ward,* 105 Cal. 652 [39 Pac. 33], *People* v. *Smith,* 106 Cal. 73 [39 Pac.

40], and *People* v. *Eagan,* 116 Cal. 287 [48 Pac. 120]. We are unable to perceive that any of these decisions supports the contention which appellant makes. Leaving now the decisions in this state, we shall refer to but one authority relied upon, as an examination of its text will enable us to ascertain the true rule upon the question now under scrutiny. Appellant quotes a part of the text under rule 4, in chapter VI, of Wills on Circumstantial Evidence. The rule itself is thus stated, italics ours: "In order to justify the inference of guilt, the inculpatory facts must be incompatible with the *innocence* of the accused, and incapable of explanation upon any other reasonable hypothesis than that of his guilt." In a portion of the text set forth under the statement of the rule, and within a quotation therefrom upon which appellant relies, occurs the following, italics again ours: "It is not enough . . . that a particular hypothesis will explain all the phenomena; nothing must be inferred merely because, if true, it would account for the facts; and if the circumstances are equally capable of solution upon any other reasonable hypothesis, it is manifest that their true moral cause is not exclusively ascertained, but remains in uncertainty; and they must therefore be discarded as conclusive presumptions of guilt. Every other reasonable supposition by which the facts may be explained consistently with the hypothesis of *innocence* must therefore be vigorously examined and successively eliminated; and only when no other supposition will reasonably account for all the conditions of the case, can the conclusion of guilt be legitimately adopted." We have italicized the word "innocence" in these two quotations for the purpose of laying a foundation upon which to expose the difference between appellant's position and the rule so succinctly stated and illustrated by Justice Wills. Before we proceed thus to lay bare the fallacy in appellant's argument, let us state his attitude in the extreme to which it is logically to be carried. Appellant says this: If an individual is charged with two inconsistent crimes and the evidence at his trial is undisputed, and would demand a verdict of guilty of either offense if he were on trial for the commission of either, alone, he could not, upon a trial under the dual charge, be convicted of either, because of the rational hypothesis that he may be guilty of the other. That is, although he is a

73 Cal. App.—23

manifest lawbreaker, the jury may not make choice as to
his guilt. That is, again, although the mystery as to which
crime he has actually committed is not susceptible of posi-
tive and absolute solution under the evidence he must go
scot-free. These sentences, placed beside the language of
the text-book, will indicate the difference between the argu-
ment of appellant and the rule of Justice Wills. The text-
writer deals with the hypothesis of *innocence* of a particular
crime, as opposed to the hypothesis of guilt in the matter of
the same crime. Appellant deals with the hypothesis of
guilt, upon a charge of the commission of one crime, as op-
posed to a like hypothesis, upon a charge of the commission
of a second and different crime. Although manifestly
guilty of a crime, under evidence which would without cavil,
and equally support a verdict of guilt upon each of two
charges like those here made, appellant contends that a
verdict of innocence under each charge is the only possible
result. This result seems not to be possible, and it is cer-
tainly not directly determined to be possible by any au-
thority presented to us. Nor do we think appellant has
brought himself within the principle of any authority cited
by him. We have ourselves not located authority bearing
specifically upon the question.

In what we have said in the preceding paragraph we
have not forgotten that the jury in a criminal case may not
convict unless its members be convinced beyond a reasonable
doubt that the defendant is guilty of the specific offense
charged. The extreme of appellant's position, however, as
above stated, allows no reasonable doubt to the jury when
considering each charge which is made, *entirely apart from
the other*. When charge 1 is viewed alone the evidence
positively demands a conviction. When charge 2 is viewed
alone the same result is unavoidable. Does this aspect of
the question satisfy the law as to reasonable doubt, or does
it not? We believe it does. It is difficult to perceive, where
the evidence in a criminal case positively demands a convic-
tion under one or the other of two inconsistent charges, that
an acquittal must result under each merely because the evi-
dence, in theory, would equally justify a verdict of guilt
under either. This would appear to be a perversion of the
law as to reasonable doubt.

If it be conceded for the sake of argument that the authorities cited by appellant, as bearing upon the question just discussed, are in point and do support the theory advanced by him, it would seem that their application must be limited to cases in which the evidence would *equally* support a conviction on either of the two charges made. In fact, the entire argument of the question by appellant seems to proceed upon that theory. Here, however, the jury was justified, so far as we may ascertain from the record, in taking the view that the evidence was not of equal weight as applied to the two charges. Appellant gave testimony which, if believed, showed that he did not actually participate in driving the car away from the place at which it was parked on the street. In this alibi he was directly supported by the testimony of four other witnesses. The jury may well have credited this apparently formidable array of evidence. If the trial body did accord credit to the testimony laying the alibi, there was left on the charge of larceny only the question whether appellant aided and abetted the actual commission of the theft and was thereby a principal. It is upon a comparison of this possibility with the possibility of guilt upon the charge of receiving stolen goods that the jury might justly have resolved the evidence toward a conviction upon the latter charge. If appellant and a confederate—he who actually drove the car away from its parking place in the street—were together guilty of the theft the jury might reasonably have inferred that both would have shown a solicitude as to the safety of the car while it was stored in the garage. No such anxiety was shown, however, by any other person than appellant, and the attention he paid to the vehicle during the six weeks of its occupancy of the garage was, according to some of the testimony, quite marked. It is true that some of the evidence was to the effect that another person sometimes came to Mrs. Johnson's place with him, but it was not shown who this person was, nor, in fact, whether it was always the same person, nor that he paid any attention to the car when he came. In truth, there was nothing in the record to indicate that the person who upon each occasion accompanied appellant on his trips to the place was more than a casual and volunteer visitor. There was some testimony that one Shattuck was the person who stole the car, but there was no evidence

that he ever appeared at the Johnson place after the car was stored there, or that he displayed the least solicitude concerning its safety. The jury might justly have reasoned that he would have been anxious as to the car, along with appellant, if they were both guilty of the theft. The jury might justly, therefore, have concluded that appellant was not an aider and abetter, that he was guilty of receiving stolen goods and that he was not guilty of grand larceny. See *People* v. *Crane,* 34 Cal. App. 599 [168 Pac. 377].

In his petition for rehearing appellant persistently rings the changes upon the fact, that in reciting in our original opinion the evidence upholding the verdict of guilt upon the charge of receiving stolen property, we referred to testimony that appellant arranged for the use of the Johnson garage before the car was stolen. This inadvertence, if we admit without deciding that it was one, does not affect the result arrived at in the opinion, nor does it affect anything we have said in the present opinion upon the petition for rehearing.

Other points are made by petitioner, but they do not require a specific consideration.

Rehearing denied.

Finlayson, P. J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 25, 1925.

All the Justices concurred.