[Crim. No. 14637.   Second Dist., Div. One.   Nov. 12, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES ELDON CAMPO, Defendant and Appellant.

Armand Arabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ronald F. Russo, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of forgery (§ 470, Pen. Code), and of receiving stolen property (§ 496, subd. 1, Pen. Code).

In an information filed in Los Angeles County on July 27, 1967, James Eldon Campo (appellant) and Carl Lockhart were charged in count 1 with burglarizing a building on May

13, 1967; in count 2 Campo was charged with forgery in that he did on May 13, 1967. make a check in writing for the payment of $112.23 and did then pass the same knowing the check was forged and with intent to cheat and defraud Sara's Place; in count 3 it was charged that Campo did on May 13, 1967, receive a camera and certain checks knowing the same to have been stolen from Lewis Smith. Certain prior convictions were also charged against Campo. Campo pleaded not guilty and at first denied the charged priors. Later he admitted to seven prior convictions.

In a jury trial Campo was found not guilty of the charged burglary and guilty of the charged forgery and of the charge of receiving stolen property. Campo was sentenced to the state prison, the terms on each count to run concurrently.

A résumé of some of the facts in the case follows: at about 3:15 a.m. on May 13, 1967, Elvin Mayer locked up his bar, The Spur, and left. When he returned at about 11 a.m. that same day he ascertained that the cigarette machine had been broken into and that about $50 was missing in addition to a radio, a substantial amount of whisky, a microphone, some blank checks and a Fotron electric camera, serial number 33830. Mayer kept pads of blank checks in a desk drawer at the bar, the checks containing the name of the establishment, Mayer's name, the address and a telephone number in the upper left corner.

Mayer testified that 5 checks (exh. 2-4) were within the group of checks missing from his office. One of these checks was made out to Campo and Campo's signature appeared upon the back. The other checks were made out to a Mr. Lockhart and his signature appeared on the back of such checks. Mayer had not signed any of such checks and he had not given anyone permission to sign for him. Campo never had worked for Mayer or Mayer's wife and there was never any indebtedness by Mayer to Campo. Mayer identified two photographs of his camera with serial number 33830 as the camera which was taken from his bar.

Mrs. Sara Leath owned and managed a bar known as Sara's Place in May 1967. Campo and Lockhart were customers. Campo came into Sara's Place on May 13, 1967, with the camera taken from Mayer's and told Mrs. Leath that the camera was his. On two different occasions Campo made a loan from Mrs. Leath and put up the camera as collateral. On May 13, 1967, Campo presented a check to Mrs. Leath for cashing. The check was one of the group taken from Mayer's desk. According to Lockhart he made out the check for

$112.50 in favor of Campo and signed Mayer's name. Lockhart testified that he called Campo outside the bar at Sara's Place, stated that he needed some money, needed to cash a check—that he filled in the whole check at one time and then gave it to Campo to take into the bar to get it cashed. Campo under those circumstances took the check to the bar and told Mrs. Leath that the check was for his performance of services for Mayer's wife. The check was cashed. Campo gave part of the returns to Lockhart and kept some for himself. The check upon presentation at the bank was found to be a forgery and "bounced."

Lockhart testified on direct examination that he had been convicted of a felony—saying, "I am glad this was brought up so I can be honest about this. I am on parole. I just got out of San Quentin, California. I am on parole for forgery." When Lockhart was cross-examined he stated positively to the effect that he had been convicted only once—upon further questioning, he admitted that he had been convicted of forgery in Kansas in 1955 and that he had been convicted of forgery in Nevada in 1957. He frankly admitted that he had gone into the Mayer bar after it was closed on May 13, 1967, and had taken whisky and the radio, but stated that he had not taken the checks or any money from the place—that a "Mr. X" who he refused to name might have taken such. He further admitted to having forged one of the checks not involved in Campo's matter and stated that he had pleaded guilty to such a charge but had not been sentenced as of that date. Campo did not testify.

Appellant now asserts that the prosecution caused evidence of a prior conviction to be offered into evidence and that such constituted reversible error. There is no merit to the contention of appellant.

Lockhart, it is true, had pleaded guilty to a charge of forgery involving one of the checks taken from Mayer's. However, the plea of guilty to a felony constitutes valid proof of a felony conviction. (*People* v. *Jacobs,* 73 Cal.App. 334, 347 [238 P. 770].) (See also Evid. Code, § 788; Witkin, Cal. Evidence (2d ed. 1966) § 1246.) In any event the checks in which Lockhart was involved had nothing to do with appellant and were not received into evidence.

Furthermore, no specific objection was directed to the particular evidence which he desired excluded and the failure to interpose the proper objection at the proper time bars him from raising the objection at this late date. (See *People* v.

*Jacobs, supra,* 73 Cal.App. 334, 345; *People* v. *Fontaine,* 237. Cal.App.2d 320, 329 [46 Cal.Rptr. 855].)

There was no bad faith exhibited by the prosecution in asking the impeaching question of Lockhart. It is quite apparent that Lockhart's record was immediately available to law enforcement officers and further it is apparent that the prosecutor knew when and where Lockhart had served at least three terms for forgery.

As heretofore indicated, Lockhart indicated in his direct examination considerable association with Campo. The prosecution in cross-examination asked Lockhart how long he had known Campo and was given some very general and what appears to be evasive answers. When asked if he had seen Campo in 1962 he replied in the affirmative and when asked if he had seen him in 1963, Lockhart answered: "Let me see. Yes, I seen him in 1963." The next question was, "Where?" and the answer was, "I seen him at the penitentiary." Campo made no objection to the question and there was no motion to strike the answer. Counsel asked permission to approach the bench and there complained that the prosecutor by the answer had brought out that Campo previously had been convicted of a felony. It is noted that nothing was stated by the witness to the effect that Campo was an inmate of the same prison where he, the witness, was serving a term. Within a matter of a minute or so following the witness' answer the afternoon recess was taken. Upon return to court the jury was instructed by the judge (at the request of Campo), "Ladies and Gentlemen of the Jury, you are instructed by the Court to disregard the testimony of this witness that he and the defendant met in the penitentiary." There was no improper prejudice to Campo from any questioning of the witness Lockhart by the prosecutor. The court instructed the jury after a request to so instruct as indicated and we presume the jury followed the instruction.

Even, however, if there was any error in this case, the evidence is such that it is not reasonably probable that a result more favorable to Campo would have resulted in the absence of any such error. (*People* v. *Watson,* 46 Cal.2d 818, 835-837 [299 P.2d 243].) Campo had the camera which was stolen, he said it was his camera, he took pictures with it and twice put it up for collateral for loans. Campo told Mrs. Leath that the check she cashed for him was his, and that he had earned the money for services performed for Mrs. Mayer when in fact the check was not signed by Mayer, and Campo had never per-

formed any services for Mrs. Mayer. The check "bounced."

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 11, 1968, and appellant's petition for a hearing by the Supreme Court was denied January 8, 1969.